# United States Court of Appeals

## For the First Circuit

No. 10-2168

UNITED STATES,

Appellee,

v.

THOMAS STEFANIK,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Thompson, Selya, and Dyk,* Circuit Judges.

Steven A. Feldman on brief for appellant.
Mark T. Quinlivan, Assistant United States Attorney, and
Carmen M. Ortiz, United States Attorney, on brief for appellee.

March 22, 2012

* Of the Federal Circuit, sitting by designation.

**THOMPSON**, **Circuit Judge**.  An angry phone call to this court's clerk's office led to Thomas Stefanik's conviction for threatening a United States official.  Stefanik appeals, challenging the sufficiency of the evidence, a portion of the jury instructions, and the district court's failure to grant a downward adjustment on his sentence.  We see no error and affirm.

## BACKGROUND

Because Stefanik challenges the sufficiency of the evidence, we recite the facts in the light most favorable to the verdict.  See United States v. Alverio-Melendez, 640 F.3d 412, 416 n.1 (1st Cir. 2011).

In 2009, Stefanik, a sixty-year-old man, was a pro se appellant in three appeals pending before this court.  The appeals originated from civil actions that Stefanik had filed in the Springfield Division of the United States District Court for the District of Massachusetts.  On October 9, 2009, Stefanik received a notice titled "Final Notice of Default and Intent to Dismiss" from this court.  The notice indicated that his appeals would be dismissed unless he paid filing fees with the district court or filed a compliant request to proceed in forma pauperis.  Upset by the notice, Stefanik called the clerk's office for the First Circuit Court of Appeals.

Stefanik's call was fielded by Erika Dowling, a case manager.  Stefanik told Dowling about the notice he received and

indicated that he had already filed an _in forma pauperis_ motion with the district court.  Dowling informed Stefanik that he had called the court of appeals in Boston and not the district court in Springfield.  Stefanik's response: "Go to fucking Springfield and get it."  A shocked Dowling giggled and asked Stefanik if he was serious.  Stefanik answered: "Why are you laughing?  What's so fucking funny, you fucking [offensive name]?"  Dowling promptly informed Stefanik that she would be ending the call and she hung up the phone.

Dowling immediately went to her supervisor, Frank Perry, and told him what happened.  As they were speaking, Stefanik telephoned again and Perry answered.  Perry introduced himself, as did Stefanik, but the connection was poor and Perry requested another number at which he could reach Stefanik.  Perry called the number that Stefanik supplied, Stefanik answered, and Perry asked how he could help.  Stefanik repeated his concern about the notice and added that he was upset about his conversation with Dowling.  Perry attempted to assist.  He retrieved the dockets for Stefanik's cases on his computer and after reviewing them explained to Stefanik why the notice was issued.  Again Stefanik argued that he had already filed an _in forma pauperis_ motion.  When Perry explained that he could not locate the motion, Stefanik became very angry and screamed: "What kind of douche bags do you hire?  I'll come down there with my shotgun and show you who means business."

Perceiving the statement to be a threat on him and the clerk's office, Perry's heart started to race and he felt scared and intimidated. Perry chose not to respond though and forged ahead with his review of the dockets.

The conversation continued with Perry recommending that Stefanik contact the district court and file a status report with the court of appeals. Stefanik agreed to this course of action. He then stated in a conversational tone: "You're lucky I'm only talking on the phone and not driving down there with my shotgun, Perry." Perry became very anxious and intimidated and immediately stated: "This is now the second threat you have made to this office. I advise you to cease making threats to this office." An immediately irate Stefanik stated in a loud voice: "You will advise me of nothing." Then muttering a string of vulgarities, Stefanik hung up the phone.

Perry immediately reported the incident to his supervisor. An investigation followed, during which Perry was called on by the United States Marshals and the Federal Bureau of Investigation to recount his tale. Two months later Stefanik was indicted by a grand jury on one count of threatening a United States official pursuant to 18 U.S.C. § 115(a)(1)(B). Following a three day jury trial, he was found guilty.

## ANALYSIS

## A. Sufficiency of the Evidence

Stefanik moved for a judgment of acquittal both at the close of the government's case and at the end of trial, and so we review his preserved challenge to the sufficiency of the evidence de novo. United States v. Carrasco, 540 F.3d 43, 49-50 (1st Cir. 2008). In doing so, we examine the evidence in the light most favorable to the prosecution, drawing all plausible inferences in its favor. United States v. Azubike, 564 F.3d 59, 64 (1st Cir. 2009). "'If, in this light, any reasonable jury could find all the elements of the crime beyond a reasonable doubt, we must uphold the conviction.'" Id. (quoting United States v. Lizardo, 445 F.3d 73, 81 (1st Cir. 2006)).

Section 115 makes it a crime to "threaten[] to assault, kidnap, or murder, a United States official . . . with intent to impede, intimidate, or interfere with such official . . . while engaged in the performance of official duties, or with intent to retaliate against such official . . . on account of the performance of official duties." 18 U.S.C. § 115(a)(1)(B). Stefanik claims that there was not enough evidence to convict him of this crime. His reasoning goes like so: he is simply a cantankerous, elderly man who made remarks that were admittedly rude and disrespectful, but not criminal. Specifically, according to Stefanik, he could not have reasonably foreseen that Perry would have taken the

statements as threats because: (1) Stefanik told Perry that he was lucky he was <u>not</u> coming to court with a shotgun; (2) in actuality Perry was not intimidated; and (3) Stefanik's true intent was to obtain information about his <u>in</u> <u>forma</u> <u>pauperis</u> motion. Across the board, these arguments fail to persuade.

A person "may be convicted for making a threat if 'he should have reasonably foreseen that the statement he uttered would be taken as a threat by those to whom it is made.'" <u>United States</u> v. <u>Nishnianidze</u>, 342 F.3d 6, 16 (1st Cir. 2003) (quoting <u>United States</u> v. <u>Fulmer</u>, 108 F.3d 1486, 1491 (1st Cir. 1997)). The ultimate standard is objective - "whether a reasonable person would understand the statement to be threatening." <u>Id.</u> Nonetheless, "the fact-finder may consider other evidence, including the effect of the statement on the recipient." <u>Id.</u>

It is clear that a reasonable jury could have found Stefanik guilty beyond a reasonable doubt. The evidence established the following. First, Stefanik angrily screamed: "I'll come down there with my shotgun and show you who means business." (statement one). Some time later, he followed it up with a calmer: "You're lucky I'm only talking on the phone and not driving down there with my shotgun, Perry." (statement two). Both comments left Perry feeling anxious and intimidated.

In this court's opinion, it is beyond quarrel that Stefanik should have reasonably foreseen that an objectively

reasonable person, and more specifically Perry, would perceive statement one - that an armed Stefanik would show up at the courthouse - as a threat. Stefanik did not mince words and there is simply no way to view this first remark, other than as a threat. The fact that Stefanik, later in the conversation, followed it up with statement two does not negate statement one. To the extent it lends context to it, we disagree that it softens the blow. In fact, a reasonable jury could have seen things as Perry did - that statement two (made in a calm tone with a reference to Perry by name) was more concerning because it seemed calculated. This disposes of Stefanik's first argument; we now take up his second.

As support for his claim that Perry was not actually intimidated by the call, Stefanik emphasizes the following: Perry did not take any precautions when he left the courthouse on the day of the call and, in an email to his supervisor summarizing the call, Perry did not specifically indicate that he felt scared. However, Stefanik's claim that Perry was not intimidated (a fact that even if true would have limited weight in this objective analysis), is directly contradicted by the evidence. Perry testified that both remarks made him scared and intimidated; the jury was entitled to credit this testimony. The fact that, for instance, Perry did not ask an armed Marshal to escort him out of the courthouse that evening is of little weight. We turn to Stefanik's final argument on this point in question.

Even assuming, as Stefanik argues, that he did not intend to carry out the threat, and only made it in a misguided attempt to get information about the status of his cases, the statute only requires that the speaker knowingly communicates the threat, and that this threat is made with the intent to impede, intimidate, interfere, or retaliate. See 18 U.S.C. § 115(a)(1)(B); Fulmer, 108 F.3d at 1494. It is not required that Stefanik intended to, or was even able to, carry out the threat. See Fulmer, 108 F.3d at 1494. In sum, the evidence was adequate.

## B. Jury Instructions

In her instruction to the jury, the trial judge set forth (among other things) the pertinent language of section 115 and what elements the government must prove. The judge did not specifically define the term "intimidate." During deliberation, the jury requested an expanded or more detailed explanation of what must be proven with regard to the term "intimidate." Over Stefanik's objection, the judge provided the jury with the following definition, taken from the section of the Modern Federal Jury Instructions pertaining to 18 U.S.C. § 115(a)(1)(B): "Intimidate means to make timid or fearful, to inspire or affect with fear, to frighten, deter, or overawe." See 1 L. Sand et al., Modern Federal Jury Instructions - Criminal § 14.02 (Instruction 14-16) (2011). On appeal, as he did at trial, Stefanik argues that the definition was unnecessary and improper.

"We review de novo preserved claims of legal error in jury instructions, but we review for abuse of discretion claimed errors in instructions' form or wording." Uphoff Figueroa v. Alejandro, 597 F.3d 423, 434 (1st Cir. 2010). In doing so, we "look to the challenged instructions in relation to the charge as a whole, asking whether the charge in its entirety - and in the context of the evidence - presented the relevant issues to the jury fairly and adequately." Sony BMG Music Entm't v. Tenenbaum, 660 F.3d 487, 503 (1st Cir. 2011) (internal quotation marks and citation omitted). In the face of erroneous instructions, we reverse only if the error was prejudicial. See id.

Stefanik's first quibble with the definition is that it was given at all. He argues that the judge should not have defined the term because it was not outside the jury's understanding. For support Stefanik relies on United States v. Fulmer, in which the defendant, who was convicted of the same crime as Stefanik, claimed the district court erred when it declined to give the defendant's proffered definition of "intimidate." See 108 F.3d at 1493. Operating under a plain error standard, this court stated that "[w]e believe that the meaning of the word 'intimidate' is not outside of the juror's understanding such that the district court's failure to define the word could constitute an error." Id. at 1495. Stefanik cannot hang his hat on this finding. First, it does not stand for the broad proposition that it is never

-9-

appropriate for a court to define "intimidate." Second, in this case, the jurors asked for a definition of the term and therefore, presumably, they needed further explanation. While the judge was not compelled to give a definition even when the jury requested one, doing so was not an abuse of discretion. Stefanik's contrary argument is just not creditable.

Stefanik's second bone of contention is with the definition itself, which he claims was contrary to decisional law. Again we disagree. Stefanik cites to two cases for the proposition that "intimidate" requires placing a "person in reasonable apprehension of bodily harm." However, in neither of those cases was the court dealing with 18 U.S.C. § 115; rather the courts were simply setting forth the Freedom of Access to Clinic Entrances Act's definition of "intimidate." See United States v. Wilson, 154 F.3d 658, 662 (7th Cir. 1998); Am. Life League, Inc. v. Reno, 47 F.3d 642, 653 (4th Cir. 1995). Not only is this act not at issue in this case, but the Freedom of Access to Clinic Entrances Act - unlike the statute that Stefanik was charged under - expressly defines "intimidate." See 18 U.S.C. § 248(e)(3) (defining "intimidate" to mean "to place a person in reasonable apprehension of bodily harm to him - or herself or to another").

Stefanik does not provide us with any basis (case law, statutory analysis, or just plain old argument) for extending the Freedom of Access to Clinic Entrances Act's definition of

"intimidate" to section 115.  Nor does Stefanik cite to any case where a court has defined "intimidate" in the context of section 115.  Here the trial judge had no statutory definition to look to, and when a term is undefined in a statute, courts normally "give it its ordinary meaning." United States v. Santos, 553 U.S. 507, 511 (2008) (applying an ordinary meaning dictionary definition to "proceeds").  The court did just that here.  It looked to the Modern Federal Jury Instructions, which contained a definition consistent with accepted and ordinary usage.  See Miriam Webster Collegiate Dictionary (11th ed. 2003) ("to make timid or fearful ... to compel or deter by or as if by threats"); Oxford English Dictionary (2d ed. 1989) ("[t]o render timid, inspire with fear; to overawe, cow; in modern usage esp. to force to or deter from some action by threats or violence").  While reliance on pattern jury instructions does not insulate a trial court from claims of instructional error, this court has relied on the Modern Federal Jury Instructions on numerous occasions, referring to this work in one such instance as "a leading commentary." Bonilla v. Volvo Car Corp., 150 F.3d 62, 70 (1st Cir. 1998); see, e.g., United States v. Laurent, 607 F.3d 895, 902 (1st Cir. 2010); United States v. Wyatt, 561 F.3d 49, 54 (1st Cir. 2009); Acevedo-Luis v. Pagán, 478 F.3d 35, 39 (1st Cir. 2007).

Also, we do not agree that the court's definition of "intimidate" misled the jury as to the level of fear that the

-11-

threat's recipient must feel.  Particularly, Stefanik claims the court insinuated that Stefanik could be convicted based on a finding that he simply made Perry "timid" (which Stefanik defines as "upset") - a finding that Stefanik argues would not be in accord with section 115's requirements.  Stefanik's logic does not compel. First, isolation of the word "timid" overlooks the rest of the court's definition of "intimidate," which included the terms "fearful," "frighten," "deter," and "overawe" linked together by the disjunctive "or."  Second, Stefanik ignores the rest of the jury instructions, during which the court clearly set forth what the government must prove beyond a reasonable doubt.  This included the following language: "[a] threat is a serious statement expressing an intention to inflict bodily injury" and "[a] statement is a threat if a reasonable person making the statement would foresee that the recipient would understand it as a serious expression of intent to inflict bodily injury."  Jury instructions "must be viewed as a whole, not as individual provisions in isolation."  Wright v. Marshall, 656 F.3d 102, 111 (1st Cir. 2011) (citing Estelle v. McGuire, 502 U.S. 62, 72 (1991)).

We reach our conclusion.  The jury charge, including the definition of "intimidate," fully and appropriately presented the pertinent issues to the jury.

## C. Sentence

At sentencing, Stefanik requested a two-level reduction for acceptance of responsibility. See U.S. Sentencing Guidelines Manual § 3E1.1(a). The district court denied the request and Stefanik cries foul.

"We review a sentencing court's determination of whether a defendant accepted responsibility for clear error." United States v. Garrasteguy, 559 F.3d 34, 38 (1st Cir. 2009); see also United States v. Deppe, 509 F.3d 54, 60 (1st Cir. 2007) (recognizing "the special difficulty of discerning, on a cold record, whether a defendant's expressions of remorse were in earnest"). Because credibility and demeanor are critical factors in assessing a defendant's contrition, we give great respect to the finding of the sentencing judge, who has observed the defendant first hand. See United States v. Carrington, 96 F.3d 1, 9 (1st Cir. 1996). We do not disturb the court's finding unless it is without foundation. See id. at 9-10.

Stefanik's first obstacle to obtaining an acceptance of responsibility reduction is his decision to proceed to trial. Though this hurdle is not insurmountable, putting the government to its burden of proof at trial creates a rebuttable presumption that a downward adjustment is not available. See Deppe, 509 F.3d at 60. A downward adjustment after trial will only be awarded in "rare situations." Id. (quoting U.S. Sentencing Guidelines Manual §

-13-

3E1.1 cmt. n.2). One possible scenario potentially justifying a reduction - and the one which Stefanik claims his case falls into - is when a defendant goes to trial not to raise issues related to factual guilt but to challenge the applicability of the criminal statute to the complained of conduct. See U.S. Sentencing Guidelines Manual § 3E1.1 cmt. n.2. According to Stefanik, because he admitted to making the statements to Perry and Dowling, and only went to trial to argue that the comments were not felonious, an adjustment is warranted.

The district court was not convinced. It found that even though Stefanik admitted to making the remarks, his take on things at trial - I was just blowing off steam and I was never going to actually do it - showed that he declined to accept full responsibility for his words, his intent, or how his words would likely be viewed. This finding was not without foundation. Even though Stefanik admitted he spoke the words, he indeed downplayed their significance. Stefanik testified that he "unintentionally" said he was coming to court with a shotgun; he was just "frustrated, not mad at anybody"; he "never meant it to be a threat"; and when asked if he could see why someone would perceive his statements as threats, Stefanik responded "I would say not."

The district court's conclusion that Stefanik did not accept responsibility was not clearly erroneous. This is not one of those rare situations that warrants reversal.

## CONCLUSION

Having found no merit in any of Stefanik's contentions, we affirm his conviction and sentence.