RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 18a0236p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

No. 17-5813

ROBERT R. DOGGART,

*Defendant-Appellant*.

———————

Appeal from the United States District Court
for the Eastern District of Tennessee of Chattanooga.
No. 1:15-cr-00039-1—Curtis L. Collier, Chief District Judge.

Argued:  October 4, 2018

Decided and Filed:  October 18, 2018

Before:  SUTTON, McKEAGUE, and THAPAR, Circuit Judges.

———————

## COUNSEL

**ARGUED:**  Jennifer Niles Coffin, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Knoxville, Tennessee, for Appellant.  Perry H. Piper, UNITED STATES ATTORNEY'S OFFICE, Chattanooga, Tennessee, for Appellee.  **ON BRIEF:**  Jennifer Niles Coffin, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Knoxville, Tennessee, for Appellant.   Perry H. Piper, UNITED STATES ATTORNEY'S OFFICE, Chattanooga, Tennessee, Thomas E. Chandler, Anna M. Baldwin, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

---

**OPINION**

---

SUTTON, Circuit Judge.   Rare is the defendant who insists that we find him guilty. Rarer still is the defendant who gets his way.

Robert Doggart is on his way to accomplishing both.   After federal agents arrested Doggart for plotting to attack an Islamic community at the foothills of the Catskill Mountains, he attempted to plead guilty to making a threat in interstate commerce, a crime carrying a sentence of no more than five years.   But the district court found that he had not made a cognizable threat and rejected his plea under Criminal Rule 11.   After that and after the government added some charges, a jury convicted Doggart of solicitation to damage religious property and solicitation to commit arson, leaving him with a sentence of almost 20 years.   Because the district court wrongly rejected the plea agreement, we reverse its decision to reject the agreement, leave in place for now the later convictions, and remand for it to reconsider the agreement under the correct law.

I.

Islamberg is a community of around 40 Muslim families near Hancock, New York.   It is a self-organized and self-named community, though not a recognized municipality, that sits on 68 acres privately owned by two residents.   Along with its private homes, Islamberg has a few shared buildings, including a mosque.   In recent years, inaccurate reporting about Islamberg has found its way into the news, including a story suggesting the community supported terrorism.

Doggart is from Tennessee.   After running unsuccessfully for Congress in 2014, he started investigating reports about terrorist training camps in Tennessee.   One thing led to another, and before long he became obsessed with Islamberg and began to worry that the residents of Islamberg planned to attack New York City.

In February 2015, Doggart posted a message on Facebook calling for the destruction of "Target 3"—his code name for Islamberg—and sought help from other "gunners."  R. 14 at 2–4.

A confidential source for the FBI saw his message and responded to it.  Doggart and the source spoke numerous times over the phone as Doggart tried to recruit him to join his attack on Islamberg.  On March 6, Doggart told the source that "those guys [in Islamberg have] to be killed.  Their buildings need to be burnt down.  If we can get in there and do that not losing a man, even the better."  *Id.* at 3.  Doggart met with the source twice.  During the meetings, Doggart stressed his desire to burn down Islamberg's three main buildings and even kill the town's residents if necessary.  He also showed the informant a shotgun and M4 rifle, the weapons he planned to use for the job.

Doggart also tried to recruit a South Carolina man named William Tint to join him in the attack.  Tint offered to help Doggart, noting that he knew a demolitions expert who could help them burn down Islamberg's main buildings.  Doggart replied enthusiastically.

Unwilling to let things proceed any further, the FBI arrested Doggart.  The government charged him with one count of making a threat in interstate commerce, based on his March 6 phone call with the confidential source.  The parties submitted a plea agreement under which Doggart would plead guilty to the threat charge and the government would not oppose a sentence reduction for acceptance of responsibility.  The district court rejected the plea, reasoning that it did not contain a sufficient basis for convicting Doggart of making a threat.

The government filed a new indictment charging Doggart with solicitation to damage religious property.  This time Doggart refused to plead guilty.  The government filed a superseding indictment containing four charges:  solicitation to damage religious property, solicitation to commit arson against the mosque, and two counts of making a threat in interstate commerce.  After an eight-day trial, a jury convicted Doggart on all four charges.  Doggart moved for acquittal on all of them. The district court granted his motion with respect to the two threat counts, concluding once again that Doggart had not made cognizable threats.  The court sentenced him to 235 months on the remaining two solicitation convictions.

II.

Doggart maintains that the district court had no business rejecting his guilty plea, a claim that receives abuse-of-discretion review.  *See United States v. Cota-Luna*, 891 F.3d 639, 648 (6th

Cir. 2018). A mistake of law—including a mistake about the meaning of a criminal statute—amounts to an abuse of discretion. *Koon v. United States*, 518 U.S. 81, 100 (1996).

Criminal defendants have no right to require district courts to accept their guilty pleas. *Santobello v. New York*, 404 U.S. 257, 262 (1971). But a district court must provide a sound reason for refusing a plea. *Cota-Luna*, 891 F.3d at 647. A misunderstanding of law does not count as a sound reason for rejecting a guilty plea and thus amounts to an abuse of discretion. *See id.* at 648–50; *id.* at 652 (Kethledge, J., concurring in the judgment); *see also United States v. Rea-Beltran*, 457 F.3d 695, 700–02 (7th Cir. 2006).

Under Criminal Rule 11(b)(3), a district court "must determine that there is a factual basis for the plea" before accepting it—that the defendant's admitted conduct in other words amounts to an admitted crime, *see McCarthy v. United States*, 394 U.S. 459, 467 (1969). As the district court saw it, Doggart's admitted conduct—telling the confidential source that he planned to destroy several buildings and kill residents of Islamberg—did not violate the threat statute because his statement did not amount to an objective threat. 18 U.S.C. § 875(c).

Was that correct? We don't think so.

Section 875(c) punishes the transmission in interstate commerce of "any communication containing . . . any threat to injure the person of another." To convict a person under this law, the government must prove that: (1) the defendant sent a message in interstate commerce; (2) a reasonable observer would view the message as a threat; and (3) the defendant intended the message as a threat. *See Elonis v. United States*, 135 S. Ct. 2001, 2011 (2015); *United States v. Jeffries*, 692 F.3d 473, 478 (6th Cir. 2012).

Element one is easy. Doggart knowingly sent a message in interstate commerce—his communication with the FBI source.

Element two is a closer call. But the factual statements in support of the plea satisfy that element too. A reasonable observer would have understood his message as an objectively serious expression of an intent to inflict loss or harm.

Pertinent definitions of threat all revolve around a single theme: an expression of an intent to inflict loss or harm. *See Jeffries*, 692 F.3d at 483–84 (Sutton, J., *dubitante*); *see also Elonis*, 135 S. Ct. at 2008; *id.* at 2014 (Alito, J., concurring in part and dissenting in part). That's what the *Oxford English Dictionary* says: "[T]o declare (usually unconditionally) one's intention of inflicting injury upon" a person. 11 *Oxford English Dictionary* 353 (1933). So does *Webster's Second*: "*Law*, specif., an expression of an intention to inflict loss or harm on another by illegal means." *Webster's New International Dictionary* 2633 (2d ed. 1942). And so too does *Black's*: "A communicated intent to inflict harm or loss on another." *Black's Law Dictionary* 1708 (10th ed. 2014).

Every circuit to weigh in on the matter has taken the same side on this point. *See United States v. Stefanik*, 674 F.3d 71, 77 (1st Cir. 2012) ("serious expression of intent to inflict bodily injury" (quotation omitted)); *United States v. Turner*, 720 F.3d 411, 427 (2d Cir. 2013) ("serious expression of an intent to inflict injury"); *United States v. Stock*, 728 F.3d 287, 293 (3d Cir. 2013) ("communications expressing an intent to inflict injury in the present or future"); *United States v. White*, 810 F.3d 212, 220 (4th Cir. 2016) ("serious expression of an intent to do harm"); *United States v. Morales*, 272 F.3d 284, 287 (5th Cir. 2001) (communication that "create[s] apprehension that its originator will act according to its tenor" (quotation omitted)); *United States v. Stewart*, 411 F.3d 825, 828 (7th Cir. 2005) ("serious expression of an intention to inflict bodily harm" (quotation omitted)); *United States v. Jongewaard*, 567 F.3d 336, 340 (8th Cir. 2009) ("express[ion of] an intention to inflict harm, loss, evil, injury, or damage on another"); *Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058, 1075 (9th Cir. 2002) (en banc) ("expression of an intention to inflict evil, injury, or damage on another" (quotation omitted)); *United States v. Heineman*, 767 F.3d 970, 972 (10th Cir. 2014) ("declaration of intention, purpose, design, goal, or determination to inflict [bodily injury] on another" (quotation omitted)); *United States v. Alaboud*, 347 F.3d 1293, 1296–97 (11th Cir. 2003) ("serious expression of an intention to inflict bodily harm" (quotation omitted)).

Measured by this definition, Doggart's statement qualified objectively as a threat. Doggart told the confidential informant that "those guys [in Islamberg have] to be killed. Their buildings need to be burnt down. If we can get in there and do that not losing a man, even the

better." R. 14 at 3. A reasonable observer eavesdropping on that conversation would have understood Doggart's words to be a serious expression of his intent to inflict harm on the residents of Islamberg. Nothing about the context of the statement suggested he was joking. Nothing suggested he was engaged in some kind of bigoted rant. Nothing suggested this was a passing fancy. Nothing in short would have suggested to a reasonable observer that he did not mean what he said.

The question, keep in mind, is not whether Doggart spoke or acted reasonably; few would-be criminals meet that requirement. The relevant question is whether a reasonable observer would take his words to be an authentic threat. As to that, nothing about the words themselves or the context in which he uttered them diminished the meaning conveyed by them.

None of this, by the way, means that every attempted crime is a threat or just the same in the other direction. Many attempts involve just actions, not threatening statements. And just because a defendant makes a threat does not make him liable for attempt. While the threat statute requires that the defendant intended to make a threat, *Elonis*, 135 S. Ct. at 2012, attempt statutes require that the defendant intended to commit the underlying offense, *United States v. LaPointe*, 690 F.3d 434, 444 (6th Cir. 2012). Attempts and threats remain distinct.

So too for solicitation and conspiracy. Solicitation requires that the defendant attempted to induce another person to commit a federal felony. 18 U.S.C. § 373(a). But an individual may commit a threat alone. And while the threat statute requires an interstate message expressing intent to harm another person, the solicitation statute reaches even face-to-face efforts to persuade another to commit a federal felony involving the use of force against property. *Id.* Threats and solicitations remain distinct. *See United States v. Stewart*, 420 F.3d 1007, 1013 (9th Cir. 2005). As for conspiracy, it requires an agreement between people to act together in committing any federal offense and an overt act in furtherance of the agreement. 18 U.S.C. § 371; *United States v. Mack*, 808 F.3d 1074, 1080 (6th Cir. 2015). The conspiracy statute is thus broader than the threat statute (reaching agreements to commit offenses that do not harm other people) and narrower (requiring an agreement rather than one person's expression of intent).

But some overlap between the offenses remains.  A defendant who tells his accomplice he plans to kill someone may be liable for making a threat, even if he says it in the course of another crime.  That reality follows from the statute.  Section 875(c) does not require the defendant to communicate the threat to the victim.  *Jeffries*, 692 F.3d at 483.  And many courts have concluded that a statement made to an associate or potential accomplice can be a threat.  *See United States v. Spring*, 305 F.3d 276, 280–81 (4th Cir. 2002); *United States v. Cope*, 283 F. App'x 384, 387–88 (6th Cir. 2008); *United States v. Siegler*, 272 F.3d 975, 978 (7th Cir. 2001); *Stewart*, 420 F.3d at 1016; *United States v. Martin*, 163 F.3d 1212, 1215–17 (10th Cir. 1998). Doggart's statement was no different.

The district court rejected the plea agreement because it thought Doggart did not make an objective threat.  In its defense, one of our cases, *United States v. Alkhabaz*, 104 F.3d 1492 (6th Cir. 1997), offers some support for its decision.  *Alkhabaz* concluded that a threat required *two* things when it comes to the second element:  that a reasonable observer would understand the words (1) as a serious expression of an intent to harm and (2) "to effect some change or achieve some goal through intimidation."  *Id.* at 1495.  But time and an intervening Supreme Court decision have passed by this additional gloss on the second element.

*Elonis v. United States* recognized that, to be a true threat, the defendant must subjectively intend his communication to be threatening.  135 S. Ct. at 2011.  It said nothing about an intimidation requirement.  The point of including this mens rea requirement was twofold:  It respected the customary requirement that a crime contain a state-of-mind element, and it was consistent with the dictionary definition of "threat."  *Id.* at 2008–11.  Just as importantly, the state-of-mind requirement alleviated the concerns that motivated *Alkhabaz*—the risk, say, that a prosecutor who mailed a defendant's threatening letters to another government official for review might be criminally liable for making a threat.  *Alkhabaz*, 104 F.3d at 1494.

We cannot fault the district court for following one of our precedents.  But in view of *Elonis*, we have no such obligation and now make clear that this aspect of *Alkhabaz* is no longer the law of the circuit.

When a district court mistakenly rejects a guilty plea and that mistake prejudices the defendant, the proper remedy is to reinstate the plea offer. *See Rea-Beltran*, 457 F.3d at 702–03. Doggart suffered plenty of prejudice from this misreading of the statute: He was sentenced to almost 20 years in prison rather than the maximum of five years he would have faced had the court accepted his plea. To give Doggart the benefit of his bargain, we must remand the case to the district court to reevaluate the plea agreement under the correct definition of a threat.

When the district court originally considered the plea agreement, it had no reason to examine whether the agreement satisfied the third element of the threat statute: that Doggart intended his statement as a threat. *Elonis*, 135 S. Ct. at 2011. On remand, the district court should determine whether Doggart intended his statement as a serious expression of an intent to harm.

For these reasons, we reverse the district court's decision to reject the plea agreement and remand the case to permit it to reconsider the agreement under current law. For now, we need not address Doggart's other arguments on appeal, and we will retain jurisdiction of these issues pending the district court's reconsideration. If the court finds that Doggart intended to make a threat, it must allow him to accept the plea agreement. If he pleads guilty under the terms of the agreement and if no one challenges the plea, we will then vacate Doggart's other convictions. If, on the other hand, Doggart ultimately decides not to plead guilty or the district court determines that Doggart did not intend his statement as a threat, Doggart's convictions will remain in place, and we will proceed with his appeal as to the remaining issues as well as any other potential appeal. In view of the outstanding matters to be resolved, no judgment will issue at this time.