RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 25a0310p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

DANIEL GRAND,

        *Plaintiff-Appellant*,

    *v.*

CITY OF UNIVERSITY HEIGHTS, OHIO; MICHAEL DYLAN BRENNAN, Mayor, in his official and individual capacity; LUKE MCCONVILLE, City Law Director, in his individual capacity; PAUL SIEMBORSKI, City Planning Commission member, in his individual capacity,

        *Defendants-Appellees*.

No. 24-3876

─────────────────

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
No. 1:22-cv-01594—Bridget Meehan Brennan, District Judge.

Argued:  October 21, 2025

Decided and Filed:  November 13, 2025

Before:  SUTTON, Chief Judge; BATCHELDER and LARSEN, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:**  Eden Quainton, QUAINTON LAW, PLLC, New York, New York, for Appellant. Frank H. Scialdone, MAZANEC, RASKIN, AND RYDER CO., L.P.A., Cleveland, Ohio, for Appellees.  **ON BRIEF:**  Eden Quainton, QUAINTON LAW, PLLC, New York, New York, Jonathan Gross, LAW OFFICE OF JONATHAN GROSS, Baltimore, Maryland, for Appellant. Frank H. Scialdone, Steven K. Kelley, Zachary W. Anderson, MAZANEC, RASKIN, AND RYDER CO., L.P.A., Cleveland, Ohio, for Appellees.  Elizabeth Parr Hecker, Barbara A. Schwabauer, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Amicus Curiae.

—————————

**OPINION**

—————————

SUTTON, Chief Judge.  Daniel Grand lives in University Heights, Ohio.  In 2021, he applied for a special use permit to use his home as "a place of religious assembly" under the local zoning laws.  R.81-6 at 4.  Before City officials could finally resolve his petition, however, Grand withdrew the request, stating that he did not "wish to operate a house of worship as is defined under the zoning ordinance."  R.88-4 at 1.  He nonetheless filed this federal lawsuit against the City and several officials, raising an assortment of statutory and constitutional claims.  The district court granted summary judgment for the City and its officials on the ground that some of Grand's challenges were unripe and the rest failed on the merits.  We affirm.

I.

Daniel Grand and his family live in University Heights.  Grand's Orthodox Jewish faith requires him to pray thrice daily with a group of ten men, what's known as a "minyan" in Hebrew.  R.81 at 7.  His faith also forbids him from driving on the Sabbath, which makes traveling to and from synagogues difficult.  To more easily, and more "seriously," pray on the Sabbath, Grand began inviting friends to pray with him on the holy day.  R.82-1 at 7; *see* R.81-1 at 3.  To that end, he emailed around twelve of his neighbors, inviting them to three prayer sessions "for the inauguration of the Shomayah Tefilah Beis Hakeneset" at "[t]he Daniel J. Grand Residence."  R.88-2.  The invitation referred to the event as a "shul," which in Hebrew refers to a synagogue or a house where prayer groups are held.  R.88.  Grand introduced the Rabbi, Rabbi Rosskam, for the event and asked guests to "spread the word" and "consider bring[ing] someone with you."  R.88-2.

A displeased neighbor forwarded Grand's email to University Heights Mayor Michael Brennan, who forwarded it to University Heights Law Director Luke McConville.  On January 21, 2021, McConville emailed Grand a cease-and-desist letter and told him to stop violating the City's zoning laws.  The letter informed Grand that the City "has been made aware that [he] intend[s] to use" his house as "a place of religious assembly."  R.81-6 at 4.  Grand's house is

zoned U-1, the letter continued, which prohibits the "use of the Premises as a place of religious assembly and/or in operation of a shul or synagogue." R.81-6 at 4. Violations of local ordinances, the letter added, could result in "building code citations against you." R.81-6 at 4. After Grand received the letter, he told Brennan over the phone that he wanted to host only a small, informal prayer group. Brennan, who claimed to have observed at least 120 people in the basement of another residential shul, expressed skepticism. Grand cancelled the next prayer meeting.

A day later, Grand applied to the City's Planning Commission for a Special Use Permit. In a U-1 zone, the Code of Ordinances permits only single-family dwellings, municipal or library buildings, and buildings owned by a board of education. UHCO § 1250.02. If a property owner obtains a Special Use Permit, however, he may operate a "[h]ouse[] of worship" within a U-1 zone. UHCO § 1274.01(b)(1); *see* UHCO § 1250.02(g). The City's Planning Commission issues the permits, and unsuccessful applicants may appeal to the City Council. UHCO § 1274.01(d)(2). A separate body, the Board of Zoning Appeals, "decide[s] any question involving the interpretation of any provision" in the zoning code. UHCO § 1244.03. In his application, Grand indicated that he had "11 tables" and "21 chairs" in his recreation room, and that he wanted to use the room "for periodic religious gatherings." R.81-8 at 2.

On March 4, 2021, the Planning Commission held a public hearing on Grand's application. Through counsel, Grand described his plans for a men's only prayer group, to meet "once a week and on certain high holidays." R.82-1 at 140. Grand did "not disput[e]" that his proposed use would render his home "a place of religious assembly" within the meaning of UHCO § 1274.01(b)(1). R.82-1 at 140. But he distinguished his proposal from the "usual image[] of a formal synagogue." R.82-1 at 140. Some of Grand's neighbors spoke against the proposal on the grounds that Grand understated the size of his proposed gatherings, that he had advertised the meetings on the internet, and that his proposed use would create traffic, fire, and parking issues in the area. Grand pointed out that the prayer group could not be the source of parking problems, as members of his religion "can't drive" on the "Sabbath and high holidays." R.81-11 at 9. The Planning Commission tabled the discussion, requesting more details from Grand. It scheduled another hearing on Grand's application for a few days later.

In emails exchanged after the first meeting, some members of the five-member Commission doubted whether Grand's use would constitute a "[h]ouse of worship" and thus wondered whether he needed a permit at all. R.82-1 at 192–96. It is not clear, as one commissioner put it, when "a social gathering become[s] a house of worship." R.82-1 at 192.

Just before the Commission's second hearing, Grand withdrew his application. "I do not wish to operate a house of worship," he stated, as it is "defined under the zoning ordinance." R.88-4 at 1. The Commission still held the meeting as planned, and Mayor Brennan emphasized that Grand could not operate a "house of worship" without a permit. He also asked community members to report any violations to the City. The Commission never acted further on Grand's application.

The Planning Commission was not the only arm of City government that interacted with Grand during the spring of 2021. A Lieutenant in the University Heights Police Department directed patrol units to drive past Grand's house and check for code violations. A City prosecutor sought to investigate housing code violations inside the Grand residence. With the permission of Grand's wife, a housing inspector searched the house for violations. He apparently did not find any.

Around 18 months after withdrawing his application for a zoning variance, Grand filed this lawsuit in federal court against the City and several of its officials. He raised claims under the Religious Land Use and Institutionalized Persons Act (RLUIPA), the Freedom of Access to Clinic Entrances Act (FACE Act), the First, Fourth, and Fourteenth Amendments of the U.S. Constitution, the Ohio Constitution, and other state laws. After the parties filed motions for summary judgment, the district court dismissed Grand's RLUIPA, Ohio Constitution, First Amendment, and Fourteenth Amendment claims as unripe. It then rejected as a matter of law his FACE Act, Fourth Amendment, and several state law claims on the merits. The district court declined supplemental jurisdiction over Grand's Ohio Public Records Act claim.

II.

Article III confines the jurisdiction of the federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. Certain "landmarks"—ripeness, mootness, and standing—distinguish

the disputes amenable to the judicial process from those over which we have no power. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The judicial power of the United States does not extend to a claim when "it is filed too early (making it unripe), when it is filed too late (making it moot) or when the claimant lacks a sufficiently concrete and redressable interest in the dispute (depriving the plaintiff of standing)." *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008) (en banc). Several of Grand's claims face ripeness problems.

A.

Ripeness emerges from constitutional limitations on the authority of the federal judiciary and prudential concerns about how and when we exercise that power. *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003). The doctrine disciplines the exercise of our jurisdiction, requiring us to stay our hand until a dispute comes into focus. *Warshak*, 532 F.3d at 525. To that end, we consider (1) whether the claim is fit for judicial decision in that it arises out of a concrete factual context and an actual or likely dispute, *Trump v. New York*, 592 U.S. 125, 131 (2020) (per curiam), and (2) whether withholding adjudication would do hardship to the parties, *id.* at 134; *accord Abbott Lab'ys v. Gardner*, 387 U.S. 136, 149 (1967).

In the land-use context, one important factor in a dispute's fitness for judicial decision is a "finality" requirement—a concrete and final decision by the local authorities. *Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 193 (1985), *overruled in part on other grounds by Knick v. Township of Scott*, 588 U.S. 180, 188 (2019). State and local regulators often have authority to grant variances, waivers, rezoning, and other forms of relief. *See Suitum v. Tahoe Reg'l Plan. Agency*, 520 U.S. 725, 738 (1997). Challenges to land policy often allege that a given regulation breaks this law or that one because it "goes too far." *Penn. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922). But "a court cannot determine whether a regulation has gone 'too far' unless it knows how far the regulation goes." *MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340, 348 (1986). For that reason, land-use challenges are generally unripe until the "relevant administrative agency resolve[s] the appropriate application of the zoning ordinance to the property in dispute." *Miles Christi Religious Ord. v. Township of Northville*, 629 F.3d 533, 537 (6th Cir. 2010); *see Knick*, 588 U.S. at 197 (describing this "settled" finality requirement).

This approach ensures that municipal land-use policy begins in local, politically accountable hands.  And it prevents us from swinging at a moving target.  *See Miles Christi*, 629 F.3d at 537–38.  We have applied this requirement to a variety of constitutional and statutory challenges to land-use policy.  *See id.* at 536–37 (RLUIPA); *Bannum, Inc. v. City of Louisville*, 958 F.2d 1354, 1362 (6th Cir. 1992) (Equal Protection Clause); *Insomnia Inc. v. City of Memphis*, 278 F. App'x 609, 613 (6th Cir. 2008) (Speech Clause).

Gauged by these requirements, most of Grand's challenges to the ordinance are unripe.  Grand does not point to a final decision implementing the challenged ordinance, and he does not show that delayed adjudication will harm him.  As a result, his First Amendment, Fourteenth Amendment, Ohio Constitution, and RLUIPA claims are unripe, both because they are not fit for review and because Grand will not be prejudiced by any delay.

*Unfit for review in the absence of a final decision*.  The relevant local agencies never reached a final decision about the application of the City's zoning rules to Grand.  The Planning Commission implements the City's zoning ordinances, including any decisions about special use permits, and its decisions may be appealed to the City Council.  Meanwhile, the Board of Zoning Appeals hears challenges to the Commission's interpretation of the zoning code.  UHCO § 1244.03.  As Grand concedes, neither the Planning Commission nor the City Council nor the Board of Zoning Appeals has ever determined whether UHCO § 1274.01 applies to the kinds of gatherings he has in mind.  And because Grand withdrew his application, the zoning board has never issued a final decision—or for that matter any decision—about his eligibility for a special use permit.  The government body "charged with implementing the regulations," in short, has not "reached a final decision regarding the application of the regulations to the property at issue." *Williamson Cnty.*, 473 U.S. at 186–87.  Grand's claims thus never ripened into a dispute suitable for federal review.

*Grace Community Church v. Lenox Township* illustrates the point.  544 F.3d 609 (6th Cir. 2008).  A town revoked a special use permit that it had previously granted to a church after learning that the church violated the permit's conditions.  *Id.* at 611.  The church offered "no comment" at the revocation hearing, declined to appeal the decision, and failed to apply for reinstatement.  *Id.* at 616.  It instead sued the town in federal court.  *Id.* at 612.  Although the

local planning commission revoked the permit, the church's silence meant that the commission rested the revocation on an "inconclusive but essentially unrebutted" finding that the church violated the permit. *Id.* at 616. That unappealed and inconclusive decision, we held, failed to ripen into a cognizable claim. *Id.* at 616–17.

Just so here. The University Heights Planning Commission never determined whether the ordinance applied to Grand's gatherings and never determined his eligibility for a special use permit. Nor was this the City's fault. Grand withdrew his application for a special use permit before anyone had a chance to adopt an interpretation of the ordinance or even to determine whether Grand needed a special use permit in the first place. Grand's claims, in truth, are further from maturity than Grace Community Church's claims.

Grand offers a few rejoinders. He contends that the cease-and-desist letter counts as a final decision. The problem with the argument is that it misapprehends the finality requirement. To ripen his claims, Grand needed a final decision from the agency with authority over the challenged regulations. That final decision would come from the Board of Zoning Appeals. McConville, the University Heights Law Director who sent the zoning-violation letter, has no role in the relevant agencies. And Mayor Brennan neither controls the Planning Commission nor sits on the Board of Zoning Appeals. Grand's case, at bottom, turns on whether his proposed gatherings would render his home a "house[] of worship" under the ordinance. UHCO § 1274.01(b)(1). Only the zoning board, not Brennan or McConville, can answer that question. Due to Grand's decision to withdraw his special use application, the zoning board had no application to act on, leaving us with "no idea" how the ordinance works in this setting. *Toilet Goods Ass'n, Inc. v. Gardner*, 387 U.S. 158, 163 (1967).

Even though Grand did not need to exhaust his local remedies, he did need to obtain a final decision. The point of this requirement is not to channel disputes through elaborate local procedures or three layers of state-court review. *See Palazzolo v. Rhode Island*, 533 U.S. 606, 624 (2001). Its purpose is simply to determine the government's position, which is why "nothing more than *de facto* finality is necessary." *Pakdel v. City & Cnty. of San Francisco*, 594 U.S. 474, 479 (2021) (per curiam). No such finality exists.

Grand claims that any effort to obtain a final decision would have been futile, insisting that further proceedings before the Planning Commission had nowhere to go. Local authorities, it is true, may not hide behind "repetitive or unfair land-use procedures in order to avoid a final decision." *Palazzolo*, 533 U.S. at 621. Ripeness, it is also true, does not require further proceedings after the government has already "dug in its heels." *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 349 (2d Cir. 2005). But "futility" is not an exception to finality; it's another way to state the rule. *See Bannum*, 958 F.2d at 1363. A government's position is final when it has adopted a settled position or refused to answer a complaint. *See id.*

While the legal premise of this argument has merit, its application here does not. These zoning proceedings had not become an empty affair. The Commission tabled Grand's application before it could act on it. Then, after the Commissioners went back and forth by email about the merits of the application, the Commission scheduled a second hearing to consider Grand's position in greater detail. When Grand withdrew his application on the eve of the second hearing, he said that he was doing so because the ordinance did not apply to his planned use, and he therefore did not need a permit. Nothing about this sequence of events demonstrates prejudgment of Grand's claim. Quite the opposite. The emails between the Commissioners suggest that they found the issue complicated, and some viewed his use of his house for small prayer meetings as consistent with the ordinance. In the last analysis, we cannot say whether the City has "dug in its heels" because we still do not know where it stands on this application of the ordinance. *Murphy*, 402 F.3d at 349.

Grand insists that, at a minimum, his due process claim ripened immediately after the first Commission hearing. But it's difficult to see how Grand can have a cognizable due process claim when his actions—dropping any effort to obtain relief—brought to an end whatever process is due. *See Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) ("In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her . . . ."); *Dusanek v. Hannon*, 677 F.2d 538, 543 (7th Cir. 1982).

*No hardship to Grand*. This approach does not unfairly harm Grand. It was his actions, not anyone else's, that created the ripeness problem. A dismissal on ripeness grounds is *without prejudice*, and Grand remains free to file a new action if the City applies the ordinance to him in

a way that violates his statutory or constitutional rights. Hardship from the denial of pre-enforcement review ordinarily emerges from a forced choice. Unable to assert his rights judicially, the plaintiff is left to pick between (1) compliance with a burdensome and potentially unlawful policy or (2) refusal to comply and the risk of sanctions that comes with it. *See, e.g.*, *Abbott Lab'ys*, 387 U.S. at 153; *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 68 (2014); *Columbia Broadcasting Sys., Inc. v. United States*, 316 U.S. 407, 417–19 (1942). Not every claimant faces that dilemma, however. Some challenged policies do not "force" the plaintiff "to modify [his] behavior in order to avoid future adverse consequences." *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 734 (1998).

The ordinance is such a policy, and Grand is such a plaintiff. If Grand wants clarity about the challenged policies, the local agencies remain available to provide it. Grand retains the right to apply for a permit, "complete the factual record," "more fully explain [his] position," or appeal any adverse determination by the Planning Commission. *Grace Community*, 544 F.3d at 616; *see Miles Christi*, 629 F.3d at 539. Any gate to relief is locked from within. Grand may open the door whenever he wishes. Until then, it is not for us to permit "litigation by hypothetical" when local authorities stand ready to provide whatever clarity or permission the claimant needs. *Warshak*, 532 F.3d at 529.

Grand returns to the cease-and-desist letter as a ground for distinguishing *Miles Christi*. He notes that, in *Miles Christi*, local rules suspended enforcement of zoning rules during an appeal to the zoning board. *See* 629 F.3d at 542. Because University Heights lacks a similar suspension process during an appeal, he reasons, he cannot delay enforcement of the City's policy during an appeal and thus will suffer greater hardship from the denial of judicial review. But that distinction highlights the difference between the letter he received and the ticket issued in *Miles Christi*. The letter is not an enforcement action, and the City may not enforce it. During a proceeding before the Planning Commission or Board of Zoning Appeals, in other words, the letter would not impose a hardship. Grand needs no relief from a document that does not harm him. *Murphy*, 402 F.3d at 349 ("[T]he cease and desist order did not inflict an immediate injury.").

As a final riposte, Grand urges us to conclude that the City's zoning rules chill First Amendment expression.  Potential infringement of free-speech rights no doubt deserves weight in the hardship analysis.  *See, e.g.*, *Mahmoud v. Taylor*, 145 S. Ct. 2332, 2358 (2025); *Driehaus*, 573 U.S. at 168.  Yet it is specific objective harm, not "subjective 'chill,'" that counts.  *Laird v. Tatum*, 408 U.S. 1, 14–15 (1972).  For that reason, we "look at each case to determine the consequences of staying our hand."  *Miles Christi*, 629 F.3d at 540.  Grand admits, as an initial matter, that he has convened a minyan on the Sabbath at least once after the end of the Planning Commission meetings.  That does not sound like chill.  *See Laird*, 408 U.S. at 14 n.7.  Grand, at all events, still holds the keys to resolving any uncertainty about the zoning policy.  Having chosen not to obtain a final decision, indeed any enforceable decision, about the application of the zoning rules to his home, he is the author of any chilling effect on his First Amendment interests, not the City.

Grand and the United States as amicus curiae argue that, even if the finality imperative applies to as-applied claims, it does not apply to facial challenges to zoning ordinances.  We agree.  Facial challenges assert that "no set of circumstances exists under which" the challenged enactment or action would be lawful.  *United States v. Salerno*, 481 U.S. 739, 745 (1987).  Waiting for the government to "reach[] a final decision regarding the application of the regulations," *Williamson Cnty.*, 473 U.S. at 538, does not make sense if the regulations are unlawful no matter how the government applies them, *see Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 287 (5th Cir. 2012).  A zoning policy that permitted special use requests only by people of one faith, as an example, would be facially unconstitutional and could be challenged with, or without, a final decision by the relevant agency.  In that setting, the claim is "generally ripe the moment the challenged regulation or ordinance is passed."  *Suitum*, 520 U.S. at 736 n.10; *accord Yee v. City of Escondido*, 503 U.S. 519, 532–35 (1992); *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 494 (1987).

While Grand's facial claims do not have a finality problem, they fail for two independent reasons.  For one, Grand forfeited these claims, as the district court correctly held.  Parties forfeit arguments at the summary judgment stage by failing to adequately address them in response to a motion for summary judgment.  *Bennett v. Hurley Med. Ctr.*, 86 F.4th 314, 324 (6th Cir. 2023).

That is what happened. When the parties cross-moved for summary judgment, Grand failed to provide any sustained argument in support of his facial arguments. He instead simply asserted, sporadically and without development, that the ordinance is unlawful on its face. Those conclusory references do not preserve his claims for appeal.

For another reason, any such claim fails as a matter of law. Facial challenges require a showing that the challenged action would violate the law under any set of circumstances. *Salerno*, 481 U.S. at 745. These kinds of claims face an "uphill battle" in the land-use setting. *Keystone Bituminous*, 480 U.S. at 494. This case shows why. To prevail, Grand would have to show that the city's zoning policy—requiring permission for a place of religious assembly— could never be lawfully applied in any context. *See Bucklew v. Precythe*, 587 U.S. 119, 138 (2019); *Yee*, 503 U.S. at 532–35. He cannot make that showing, and he has not even tried. Surely, as one obvious example, the City could prohibit a 3,000 person worship hall from being placed in a residential part of University Heights. *See Mount Elliott Cemetery Ass'n v. City of Troy*, 171 F.3d 398, 405 (6th Cir. 1999). "[A] church has no constitutional right to be free from reasonable zoning regulations nor does a church have a constitutional right to build its house of worship where it pleases." *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 652 (10th Cir. 2006). This example suffices to show that Grand cannot meet the *Salerno* standard.

III.

The district court correctly dismissed Grand's Fourth Amendment and FACE Act claims on the merits.

*Fourth Amendment*. Grand argues that the City violated his Fourth Amendment rights by sending a housing inspector into his home without a warrant. The Fourth Amendment provides, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const., amend. IV. Home inspections are "searches" within the meaning of the guarantee. *Camara v. Mun. Ct. of City & Cnty. of S.F.*, 387 U.S. 523, 528 (1967). And the Fourth Amendment ordinarily

prohibits warrantless searches of a home.  *See, e.g.*, *Lange v. California*, 594 U.S. 295, 298 (2021).

Consent, however, creates an exception to the ordinary rule.  *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).  That consent, moreover, need not come from the property owner himself.  *See, e.g.*, *United States v. Ayoub*, 498 F.3d 532, 537 (6th Cir. 2007).  So long as the consenting party had "apparent or actual authority over the premises," the consent is valid. *United States v. Sheckles*, 996 F.3d 330, 346 (6th Cir. 2021).

In this instance, Grand's wife gave the inspector permission to search the house.  Nothing about their exchange would lead an officer to think Grand's wife lacked authority over the house. Her consent forecloses her husband's argument.

*FACE Act*.   Grand contends that the City violated the Freedom of Access to Clinic Entrances Act by ordering police officers to drive by his home and by asking his neighbors to file reports if they saw people congregating at his house.  The FACE Act creates civil remedies against "[w]hoever . . . by force or threat of force or by physical obstruction . . . interferes with or attempts to . . . interfere with any person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship."  18 U.S.C. § 248(a)(2). We interpret the phrase "threat of force" as referring to a serious expression of intent to inflict bodily harm.  *Cf. United States v. Doggart*, 906 F.3d 506, 510 (6th Cir. 2018) (interpreting statutes with similar language).

The district court held that the City's actions do not constitute "force," "threat of force," or "physical obstruction" within the meaning of the Act.  18 U.S.C § 248(a)(2).  Grand's reply brief, and only his reply brief, suggests that Brennan's statement at the second Commission hearing amounted to a "threat of force."  18 U.S.C. § 248(a)(2).  To start (and to repeat), arguments made for the first time in a reply brief are forfeited.  *Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010).  To finish, Grand's argument would fail even if he had properly raised it. Brennan's only threat was to ticket Grand for violating the housing code.  Few among us enjoy receiving a code citation.  But Brennan's reference to "appropriate remedies in court," R.83-1 at 247, does not remotely express "intent to inflict bodily harm."  *Planned Parenthood of*

*Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058, 1077 (9th Cir. 2002) (en banc).

*Dismissal with prejudice*.  Grand objects to the district court's dismissal of his unripe claims with prejudice.  He articulates a perfectly sound legal argument but misconceives the situation.  Federal courts indeed dismiss cases for lack of ripeness without prejudice.  *Peters v. Fair*, 427 F.3d 1035, 1038 (6th Cir. 2005).  And that is precisely what the district court did.

*Supplemental jurisdiction*.  Grand contends that the district court erred by declining supplemental jurisdiction over his Ohio Public Records Act claim.  We review this argument for abuse of discretion.  *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).  "[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims."  *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006); *see* 28 U.S.C. § 1367(c)(3).  That is just what happened.  No abuse of discretion occurred.

We affirm.