# United States Court of Appeals
## For the First Circuit

No. 24-2087

UNITED STATES OF AMERICA,

Appellee,

v.

DIMITRI MCKENZIE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Barron, Chief Judge,
Howard and Kayatta, Circuit Judges.

Jeremiah R. Newhall, with whom Newhall Law Firm was on brief, for appellant.
Karen L. Eisenstadt, Assistant United States Attorney, with whom Leah B. Foley, United States Attorney, was on brief, for appellee.

June 12, 2026

**KAYATTA**, **Circuit Judge**.    In response to an online advertisement for commercial sex, Dimitri McKenzie agreed to pay for sex with "Bri," who he was told was fourteen years old. Unbeknownst to McKenzie, "Bri" did not exist, and the ad had been posted as part of an undercover operation conducted by federal law enforcement.  When McKenzie arrived at an agreed-upon hotel later that night, agents arrested him.  A federal jury subsequently convicted him of attempted sex trafficking of a child, in violation of 18 U.S.C. §§ 1591 and 1594.

McKenzie appeals his conviction, citing various alleged errors in the trial proceedings and the judgment entered against him.  Because we find no merit in McKenzie's trial-related arguments, we affirm his conviction.  In so doing, we also clarify the judgment as described below.

**I.**

**A.**

We provide the facts of this case with the following glosses:  Because McKenzie raises a challenge to the sufficiency of the evidence, we relate the facts relevant to that challenge "in the light most favorable to the prosecution"; as to the facts relevant to McKenzie's other claims, "we provide a more or less neutral summary" and "reserve further exposition of those facts for our analysis of the claims themselves." United States v. Díaz-Rosado, 857 F.3d 116, 117 (1st Cir. 2017) (citation modified).

**B.**

This case arises from an online undercover operation conducted in the Boston area by Homeland Security Investigations (HSI).[1]  On November 2, 2022, HSI special agent Kristen Draper posted an advertisement on a commercial-sex website.[2]  According to testimony later given at trial, the ad showed two "young-looking" adult women, fully clothed and with faces obscured by emojis.  The accompanying text read "fresh, tight, and ready for a good time" and listed an age of "99 years old."[3]

Around 8:30 p.m., McKenzie texted the phone number listed on the ad.  Agent Draper responded, and the conversation proceeded as follows[4]:

```
DRAPER:    I got couple young and fresh.  bri
           14 yo and jes 12 yo.  one hour is
           $400 with both or $300 for 1
           some things are lil extra
MCKENZIE:  I'm not into anything under 18
```

---

[1]  This "sting" operation has given rise to at least two other cases that have reached this circuit recently.  See United States v. Medina, 155 F.4th 11 (1st Cir. 2025), cert. denied, No. 25-6203, 2026 WL 79673 (U.S. Jan. 12, 2026) (mem.); United States v. Quraishi, No. 25-1115 (1st Cir. argued Sept. 3, 2025).

[2]  Multiple HSI agents participated in the operation.  For the sake of simplicity, we use Agent Draper as a stand-in for the entire undercover team.

[3]  At trial, Agent Draper testified that the website does not allow a user to select an age under eighteen years old, so she intended the listed age of ninety-nine years old to indicate that the poster "couldn't post the actual age of the individuals being advertised."

[4]  We reproduce the messages here in their original form, aside from minor changes for clarity, which appear in brackets.

```
DRAPER:    ok no worries babe.  hit me up if u
           change your mind
```

McKenzie responded twenty-two seconds later:

```
MCKENZIE: Feds
DRAPER:    your the feds?  u gotta tell me
MCKENZIE: Hell no
           You Definitely are
DRAPER:    nope.  but just let us be.  thanks
MCKENZIE: I only have 100
           Could you do that
DRAPER:    i could do it for one girl for 20
           mins.  so like a [quick visit]
           no extras
           def no anal
           wear condom
MCKENZIE: Ok
DRAPER:    which girl.  you like young and
           super tight or lil more experience
           with 14 yo
MCKENZIE: 14
```

At that point, it was 8:52 p.m., and about twenty-two minutes had passed since McKenzie initiated the conversation. McKenzie then asked Agent Draper to "[v]erify" by sending a picture of "Bri."[5]  When the picture did not come through, McKenzie texted, "Im out I'm just really suspicious of this whole thing."  But sixteen seconds later, he followed up:  "What's the address." After Agent Draper sent the address for a hotel in Waltham, Massachusetts, McKenzie asked, "Is there anyway you can confirm you not the feds."  The two then discussed how each could trust that the other was not law enforcement.  At one point, in response to McKenzie's requests for verification, Agent Draper stated, "i

---

[5]  Because no "Bri" existed, we put her name in quotations.

- 4 -

aint sending porn.  thats some federal prison shit."  Eventually, McKenzie implored, "Please I want this I'm just scared."

In response, Agent Draper called McKenzie twice, but she got no response either time.  A few minutes later, McKenzie called back, and Agent Draper picked up.  During the ensuing conversation, Agent Draper apparently intimated that "Bri" and "Jes" were her daughters and agreed to provide a picture of "Bri."  After the call, when the picture did not immediately come, McKenzie called again -- without an answer -- and then texted, "Hey" and "You still there?"  At that point, Agent Draper sent an age-regressed image of an adult woman with the date scrawled on her palm; in the image, the woman has a nose piercing and what appears to be a tattoo on her wrist largely covered by her sleeve.[6]  Within moments, McKenzie replied, "I'm on my way."  Agent Draper then explained the procedure:  McKenzie would meet Agent Draper outside the hotel, and, if she approved, she would give him the key card to a hotel room where "Bri" would be waiting for him.

Before arriving, McKenzie texted once more, this time asking whether Agent Draper was available for commercial sex.  When she said no and McKenzie called that suspicious, she retorted, "Seriously dude I'm not tryna be rude but this is what we do... if

---

[6]  Agent Draper testified at trial that the image had been put through an age-regression application.  McKenzie did not challenge this testimony below and does not do so before us, either.

ur not interested that's cool." Within a minute, McKenzie clarified, "I'm on my way [right now]."

Twenty minutes later, after stopping at an ATM to withdraw $120, McKenzie met Agent Draper in the hotel parking lot. It was roughly 10:37 p.m. The two confirmed the details of their deal, McKenzie showed that he had the agreed-upon $100, and Agent Draper handed him a room keycard. Agents then emerged and arrested McKenzie.

## II.

A federal grand jury in the District of Massachusetts subsequently indicted McKenzie on one count of attempted sex trafficking of a child, in violation of 18 U.S.C. § 1591(a)(1), (b)(2) and § 1594(a). The case proceeded to trial, where, McKenzie asserts, the district court committed several errors that prejudiced his defense. We recount here only a sketch of the proceedings, shading in the details later as we confront each alleged error.

At trial, the government primarily relied on the testimony of Agent Draper, accompanied by transcripts of the text messages and phone calls between her and McKenzie. The defense case consisted solely of McKenzie's testimony on his own behalf. Based on that testimony, the defense argued that McKenzie had no prior sexual interest in minors, that he did not actually believe "Bri" was a minor, and that he went to the hotel intending only to

"talk" to "Bri" and help her escape trafficking rather than to have commercial sex.

After three days of deliberation, the jury returned a guilty verdict.[7] The district court entered judgment against McKenzie and sentenced him to a term of imprisonment of 126 months.

### III.

McKenzie's primary argument on appeal presents a question of mens rea: What awareness of the fictional "Bri's" age did McKenzie need to have to be guilty of attempted sex trafficking of a minor?[8]

McKenzie argues that, because no actual minor was involved in this case, the government needed to prove that he believed "Bri" was under the age of eighteen. The government, for its part, contends that it only needed to show that McKenzie acted with reckless disregard as to "Bri's" age. We hold that, as to the age of the person solicited, the mens rea element of attempted

---

[7] On the second day of deliberations, a Friday, the jury reported being deadlocked and the court gave an Allen charge. See Allen v. United States, 164 U.S. 492, 501 (1896). Because one juror had a flight the next morning, the court gave the parties a choice: either press on with deliberations and risk a mistrial if the jury did not reach a verdict by the end of the day, or replace the departing juror with the first alternate and resume deliberations the following Monday. At McKenzie's request, the court proceeded with the latter option, and the jury convicted McKenzie on Monday morning.

[8] Throughout this opinion, we use the term "minor" to refer to a person under the age of eighteen and the term "adult" to refer to a person aged eighteen or older.

sex trafficking of a minor is satisfied by proof that the defendant either believed, or recklessly disregarded a substantial and unjustifiable risk, that the person solicited for commercial sex was under the age of eighteen.  Our reasoning follows.

**A.**

The issue of mens rea arises in two of McKenzie's challenges on appeal -- one to the district court's jury instructions and one to the sufficiency of the evidence.  The two challenges make essentially the same argument:  Absent the involvement of an actual minor, a conviction for attempted sex trafficking of a minor requires that the defendant actually believed the person he solicited for commercial sex was under the age of eighteen; reckless disregard as to the person's age, McKenzie contends, is not enough.[9]

The material facts regarding this issue are undisputed. The government presented no evidence that McKenzie's conduct involved any actual minor.  Both individuals pictured in the

_____

[9]  McKenzie originally framed his claim of instructional error more broadly, seemingly contending that reckless disregard as to age would not be sufficient even if an actual minor was involved. However, at oral argument, counsel for McKenzie conceded -- sensibly in view of the statutory text -- that a defendant could be convicted of attempted sex trafficking of a minor based on a mens rea of reckless disregard as to age if the defendant's conduct involved an actual minor.  In light of that concession, we view McKenzie's instructional-error and sufficiency-of-the-evidence challenges as coextensively asserting that reckless disregard as to age is only insufficient where, as here, no actual minor was involved.

original advertisement that McKenzie responded to were adults. The picture of "Bri" that Agent Draper sent McKenzie depicted an adult put through age-regression software. And no minor was in the hotel room that Agent Draper directed McKenzie to right before his arrest.

In relevant part, the district court's mens rea instruction stated:

> So what [the government has] got to prove beyond a reasonable doubt is that Mr. McKenzie, not what he testified to, but he intended to entice, obtain, patronize, or solicit a person to engage in a commercial sex act.
>
> [And that] Mr. McKenzie knew that the object of the commercial sex act was a child who had not obtained the age of 18 years or that he was acting in reckless disregard of whether that person was 18 or not. And so you have in mind -- first of all, he has to have intended sex for money. Now this is only an attempt, because there really wasn't a person here in the room. An attempt to do that. And then the second point is he has got to know or at least genuinely believe that the person who is being offered for the commercial sex act is a minor under the age of 18 years or he was acting in reckless disregard, he didn't care whether the person was or was not.

McKenzie timely objected to the inclusion of the "reckless disregard" mens rea standard, thereby preserving his claim of instructional error for appeal. See United States v. Stefanik, 674 F.3d 71, 76 (1st Cir. 2012). He also preserved his sufficiency-of-the-evidence claim by moving for a judgment of

acquittal at the close of the government's case and renewing that motion at the close of evidence.  See id. at 74.  Both challenges present a question of law, which we review de novo.  Id. at 76 (claim of instructional legal error); id. at 74 (sufficiency of the evidence).[10]

**B.**

As this issue is essentially one of statutory interpretation, "we begin with the language of the statute itself." In re Fin. Oversight & Mgmt. Bd. for P.R., 919 F.3d 121, 128 (1st Cir. 2019).  The statute in question defines the offense of sex trafficking of a minor as, in relevant part:

> (a) . . . knowingly . . .
>     (1) . . .    recruit[ing],    entic[ing],
>     harbor[ing], transport[ing], provid[ing],
>     obtain[ing], advertis[ing], maintain[ing],
>     patroniz[ing], or solicit[ing] by any means
>     a person . . .
> knowing, or, . . . in reckless disregard of
> the fact, . . . that the person has not
> attained the age of 18 years and will be
> caused to engage in a commercial sex
> act . . . .

---

[10]  McKenzie's instructional-error claim challenges only the inclusion of the "reckless disregard" mens rea standard in the jury instructions, not the form or wording of the instructions. See Stefanik, 674 F.3d at 76 (differentiating between categorical challenges to the giving of an instruction at all and challenges to the "form or wording" of an instruction (quoting Uphoff Figueroa v. Alejandro, 597 F.3d 423, 434 (1st Cir. 2010))).  Likewise, McKenzie's sufficiency-of-the-evidence argument challenges only the absence of an actual minor.  He does not contend that the evidence could not support a finding of reckless disregard as to age.  Nor does he challenge any other element of the offense.

- 10 -

18 U.S.C. § 1591(a).[11]   Section 1594(a), in turn, makes it an offense to "attempt[] to violate section . . . 1591."   Id. § 1594(a).

As relevant here, then, the substantive offense of sex trafficking of a minor requires two mental states: (1) knowingly soliciting a person; while (2) knowing that, or recklessly disregarding the fact that, a minor will be caused to engage in commercial sex by virtue of that solicitation.  We are concerned here only with the latter mental state, under which reckless disregard as to age is clearly sufficient for a conviction of sex trafficking of a minor.  Although the statute does not define "reckless disregard," caselaw establishes that "[a] person acts recklessly, in the most common formulation, when he 'consciously disregards a substantial and unjustifiable risk' attached to his conduct, in 'gross deviation' from accepted standards."  Borden v. United States, 593 U.S. 420, 427 (2021) (quoting Model Penal Code § 2.02(2)(c) (A.L.I. 1985)); see also Neder v. United States, 527 U.S. 1, 21 (1999) ("Where Congress uses terms that have accumulated settled meaning under the common law, a court must infer, unless

---

[11]  For convenience, we refer to the menagerie of actions proscribed by § 1591(a)(1) -- recruiting, enticing, harboring, transporting, providing, obtaining, advertising, maintaining, patronizing, and soliciting -- as, simply, "soliciting" or "solicitation."  We note, however, that the statute requires knowledge, not just reckless disregard, of age when the charge is based on advertising.  18 U.S.C. § 1591(a).

the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms." (citation modified)).

As for attempted sex trafficking of a minor, McKenzie concedes that reckless disregard as to age generally suffices for a conviction.  He also concedes that an attempt conviction does not generally require that the person solicited be an actual minor (such as where an adult, undercover officer poses as a minor). See, e.g., Bronson v. United States, No. 22-1745, 2023 WL 9900908, at *1 (1st Cir. Sep. 5, 2023) ("[Petitioner's] contention that he is actually innocent of the crime [of attempted sex trafficking of a minor] because there was no actual minor involved here fails to present a debatable claim.").  McKenzie argues instead that, where the person solicited is not actually a minor, reckless disregard is not sufficient:  The defendant must believe the person solicited is a minor.  We therefore must determine whether this reading of the statute is correct.

### c.

The parties each assert that out-of-circuit caselaw resolves this issue.  We are unconvinced.

The government, for one, points out that several out-of-circuit cases involving undercover officers posing as minors list reckless disregard as to age as a sufficient mens rea for attempted sex trafficking of a minor.  See, e.g., United States v. Haas, 986 F.3d 467, 478 (4th Cir. 2021) ("To sustain this

attempted-sex-trafficking-of-a-child conviction, the government must have proven that . . . [the defendant] knew or recklessly disregarded that the person was under the age of eighteen . . . ."). Yet, in each such case, the reviewing court either rested its decision on a finding of knowledge or else was not asked to decide the particular issue before us. See id. (addressing claim that defendant did not engage in a substantial step); United States v. Puff, No. 23-4457, 2025 WL 830439, at *2-3 (4th Cir. Mar. 17, 2025) (unpublished opinion) (per curiam) (concluding evidence supported finding of knowledge); United States v. Tunchez, 772 F. App'x 105, 106 (5th Cir. 2019) (unpublished opinion) (per curiam) (reviewing facts suggesting knowledge); United States v. Zam Lian Mung, 989 F.3d 639, 642-43 (8th Cir. 2021) (rejecting, on plain-error review, argument that reckless-disregard standard did not apply to sex trafficking of a minor absent allegations of force, fraud, or coercion of the minor); United States v. Baker, No. 24-1242, 2025 WL 342862, at *1 (9th Cir. Jan. 30, 2025) (unpublished opinion) (deciding evidence supported finding of knowledge); United States v. Robinson, 993 F.3d 839, 844 (10th Cir. 2021) (addressing argument that defendant did not intend for target to engage in commercial sex acts until after she was no longer a minor).

McKenzie, for his part, reads the out-of-circuit caselaw as requiring that, where the person solicited either is an adult

posing as a minor or does not exist at all, the defendant believe the person solicited was a minor. In doing so, he points primarily to the Eighth Circuit's decision in United States v. Wolff, 796 F.3d 972 (8th Cir. 2015) (per curiam). The defendant there had been ensnared in a sting operation when he tried to arrange for commercial sex with a sixteen-year-old. Id. at 973. Faced with Wolff's argument that a conviction required an actual minor, the Eighth Circuit explained that "the government must prove the requisite intent applicable to the predicate offense, but proof of the ability to actually carry out the predicate offense is not required for conviction under an attempt statute." Id. at 974-75. In the end, "Wolff's subjective intent to engage in a commercial sex act with someone he believed to be a minor female," combined with the steps he took toward that goal, "constitute[d] attempted sex trafficking of a minor in violation of 18 U.S.C. § 1594(a)." Id. at 975. That Wolff's belief as to age was sufficient, though, does not mean that reckless disregard would not have been as well. See United States v. Saldaña-Rivera, 914 F.3d 721, 725 (1st Cir. 2019) (observing that courts may "cho[o]se to rest on obviously sufficient grounds for affirmance without suggesting that other grounds [are] also not available"); see also United States v. Medina, 155 F.4th 11, 20-22 (1st Cir. 2025) (similarly approving of jury instructions that required knowledge as to age, without indicating that a reckless-disregard-as-to-age instruction would

- 14 -

have been improper), <u>cert. denied</u>, No. 25-6203, 2026 WL 79673 (U.S. Jan. 12, 2026) (mem.).

McKenzie also points to <u>United States</u> v. <u>Jayavarman</u>, 871 F.3d 1050 (9th Cir. 2017). In <u>Jayavarman</u>, the Ninth Circuit rejected the argument that an attempt to produce and transport a visual depiction of a minor engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2251(c), required the presence of an actual minor, holding that "a defendant may be convicted of an attempt to violate § 2251(c) if he believes that the victim is a minor, even if the victim turns out to be an adult." <u>Id.</u> at 1059. McKenzie reads this as requiring such belief when there is no actual minor involved. And, because a completed offense under § 2251(c) imposes strict liability as to age, <u>id.</u> at 1058, McKenzie argues we should not understand an attempt to violate § 1591(a) to require any lower mens rea than an attempt to violate § 2251(c).

There are two problems with this reasoning. First, as with <u>Wolff</u>, <u>Jayavarman</u>'s conclusion that belief as to age suffices for an attempt to violate § 2251(c) does not mean that such belief is required. Second, even if it did, § 2251(c)'s strict liability regime in fact makes it an inappropriate comparator for attempted sex trafficking of a minor. This is because "[t]he rationale for punishing factually impossible attempts" -- i.e., where no minor is present -- "is that the defendant has taken substantial steps with a culpable mens rea." Kenneth W. Simons, <u>Mistake and</u>

- 15 -

_Impossibility, Law and Fact, and Culpability: A Speculative Essay_, 81 J. Crim. L. & Criminology 447, 480 n.109 (1990). "This rationale, however, does not extend to strict liability, which requires no culpability at all." Id. In contrast, § 1591(a)'s "reckless disregard" is a culpable mens rea, requiring some awareness of a substantial risk of criminality. For this reason, we find Jayavarman's holding as to § 2251(c) unhelpful in understanding § 1591(a).

So, as far as the precedent cited by the parties goes, we are left with a blank slate upon which to write our answer.

**D.**

We turn, then, to the federal law of attempt in general. "There is no statutory definition of attempt anywhere in the federal law." United States v. Dworken, 855 F.2d 12, 16 (1st Cir. 1988). Instead, this circuit turns to the Model Penal Code to define "attempt." United States v. Benítez-Beltrán, 892 F.3d 462, 468 (1st Cir. 2018). Under that definition, "we have viewed the two key elements of the offense of attempt as (1) an intent to commit the substantive offense and (2) a substantial step towards its commission." United States v. Doyon, 194 F.3d 207, 210 (1st Cir. 1999) (citation modified).

However, that "intent" need not attach to all elements of the substantive offense. Rather, as the commentary to the Model Penal Code explains, the requisite intent "extends to the conduct

- 16 -

of the actor and to the results that his conduct causes" but "need not encompass all of the circumstances included in the formal definition of the substantive offense." A.L.I., Model Penal Code & Commentaries § 5.01 cmt. 2, at 301 (1985). These "circumstances" "refer to the objective situation that the law requires to exist," such as the traditional requirement that a burglary take place at night. Id. at 301 n.9. As to these circumstances, "it is sufficient that [the defendant] acts with the culpability that is required for commission of the completed crime." Id. at 301; see also Simons, supra, at 478-84 (discussing application of different mental states to circumstances and results for attempt liability).

In arguing that the government must show he subjectively believed "Bri" was under eighteen to convict, McKenzie points to the second element of attempt, the "substantial step," which requires that the defendant "purposely do[] or omit[] to do anything that, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." Dworken, 855 F.2d at 16 (emphasis added) (quoting Model Penal Code § 5.01(1)(c) (A.L.I. 1985)). However, the language "under the circumstances as he believes them to be" simply ensures that, where a defendant believes a circumstance of the offense exists, the fact that the defendant is mistaken in that belief will not prevent a conviction for attempt. A.L.I., supra, § 5.01 cmt. 2, at 302

n.12. It does not override the principle that, as to such circumstances, an attempt defendant need only "act[] with the kind of culpability otherwise required for commission of the crime." Dworken, 855 F.2d at 16 (quoting Model Penal Code § 5.01(1)(c) (A.L.I. 1985)).

For example, suppose a law makes it a crime to knowingly injure a person while recklessly disregarding that the person is an FBI agent. See Herbert Wechsler, William Kenneth Jones & Harold L. Korn, The Treatment of Inchoate Crimes in the Model Penal Code of the American Law Institute: Attempt, Solicitation, and Conspiracy, 61 Colum. L. Rev. 571, 575–76 (1961).[12] Under the foregoing framework for attempt liability, the injury is the result that a defendant must intend, while "the fact that the victim is an agent would be only a circumstance as to which the actor [must have] the kind of culpability otherwise required for commission of the crime." Id. (quotation marks omitted). There would thus be an attempt to violate the statute if the actor attempted to injure a person, while recklessly disregarding the risk that the victim may be an FBI agent. Id. This is true regardless of the actor's subjective beliefs because "the language 'under the circumstances

---

[12] We have relied on this article before in understanding the law of attempt, as it "was written by the Chief Reporter and Special Consultants of the Model Penal Code, and was substantially adopted in the official commentary to the Code." Dworken, 855 F.2d at 16–17, 17 n.2.

- 18 -

as he believes them to be' . . . does not affect the analysis of cases like" this FBI agent hypothetical. A.L.I., supra, § 5.01 cmt. 2, at 302 n.12. The actor may, in fact, genuinely believe that the person is not an FBI agent, but the actor may also believe in circumstances that create a substantial and unjustifiable risk that the person is an FBI agent, such as that the person is wearing an FBI jacket and displaying an FBI badge. See also id. at 301-03, 303 n.13 (dissecting similar hypotheticals).

To apply this framework to sex trafficking of a minor, then, we must identify the conduct, result, and circumstances of the offense. That offense, as we have noted, prohibits knowingly soliciting a person while knowing or recklessly disregarding "that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act." 18 U.S.C. § 1591(a). The act of soliciting a person is plainly "the conduct of the actor," A.L.I., supra, § 5.01 cmt. 2, at 301, to which the "intent to commit the substantive offense," Doyon, 194 F.3d at 210 (quotation marks omitted), must extend for an attempt conviction. Similarly, the language "will be caused to engage in a commercial sex act" suggests that commercial sex is "the result[] that [the defendant's] conduct causes," to which such intent also must apply. A.L.I., supra, § 5.01 cmt. 2, at 301.

The age of the person solicited, on the other hand, is a "circumstance." Id.; see also id. at 301-02 (describing "the

age of the victim" as a circumstance of the offense of "sexual intercourse with a female under a prescribed age").  It is separated from the "conduct" of solicitation in § 1591(a) by a paragraph break and a distinct mens rea.  And, unlike causing a person to engage in a commercial sex act, the age of the person solicited cannot be a result of the defendant's conduct since the defendant does not cause that person to be a minor.  For an attempted-sex-trafficking-of-a-minor conviction, then, as to the circumstance of the age of the person solicited, "it is sufficient that [the defendant] acts with the culpability that is required for commission of the completed crime," id. at 301 -- to wit, with either knowledge or reckless disregard.

Therefore, the federal law of attempt liability suggests that an attempt to violate § 1591(a) -- i.e., an attempt to commit sex trafficking of a minor under § 1594(a) -- may be found where a defendant intends to solicit a person for commercial sex, if the defendant recklessly disregards whether the person solicited is under eighteen.  That is so, even if the defendant believes the person to be an adult.  This framework does not distinguish between those cases where the person solicited is actually a minor and those where the person solicited either turns out to be an adult posing as a minor or does not exist at all. Rather, the foregoing analysis indicates that, contrary to McKenzie's arguments, a mens rea of reckless disregard as to age suffices for an attempt

conviction even where the defendant's conduct involved no actual minor.

**E.**

Nevertheless, McKenzie seems to point to the statutory text, which refers to "the fact" "that the person has not attained the age of 18 years," 18 U.S.C. § 1591(a), to imply that an attempt conviction requires the actual existence of a person younger than eighteen. See Fact, Black's Law Dictionary (12th ed. 2024) (defining "fact" as "[s]omething that actually exists"). Under that reading, it might make sense to require that an actual minor be solicited for an attempt conviction relying on the reckless-disregard standard. On the other hand, several considerations convince us that the better reading is that no actual minor need be involved.

First, we must interpret § 1591(a), the substantive offense statute, not on its own but through the lens of § 1594(a), the attempt statute. We deal here with an "attempt[] to violate section . . . 1591." 18 U.S.C. § 1594(a). For such an attempt, not every fact necessary for the completed offense needs to be present, since "proof of the ability to actually carry out the predicate offense is not required for conviction under an attempt statute." Wolff, 796 F.3d at 974-75. McKenzie develops no argument why the "fact" of an actual minor would be uniquely necessary for an attempt conviction.

Second, requiring the presence of an actual minor would clash to some extent with indications of congressional intent in the most recent legislation to meaningfully amend § 1591(a), the Justice for Victims of Trafficking Act of 2015 (JVTA), Pub. L. No. 114-22, 129 Stat. 227. See Bittner v. United States, 598 U.S. 85, 96-98 (2023) (considering "drafting history" -- i.e., amendments to a statutory provision over time -- as one of several "contextual clues" toward that provision's meaning). The JVTA amended § 1591(a) by adding three new prohibited actions -- patronizing, soliciting, and advertising -- and clarifying that knowledge as to age is required where the action alleged is advertising a person for commercial sex. §§ 108(a)(1), 118(b)(1)-(2), 129 Stat. at 238, 247. In a statement of purpose in the JVTA, Congress expressed its intent to "mak[e] absolutely clear . . . that criminals who purchase sexual acts from human trafficking victims may be arrested, prosecuted, and convicted as sex trafficking offenders." Id. § 109(4), 129 Stat. at 239. In so doing, Congress favorably cited an Eighth Circuit opinion that reinstated the attempted-sex-trafficking convictions of two defendants caught in a sting operation in which adult law-enforcement agents posed as a man offering his girlfriend's minor daughters for commercial sex, using age-regressed photos of adult female officers. Id. § 109(3), 129 Stat. at 239 (citing United States v. Jungers, 702 F.3d 1066 (8th Cir. 2013)); see Bittner,

598 U.S. at 98 n.6 ("A preamble, purpose clause, or recital is a permissible indicator of meaning." (quoting Antonin Scalia & Bryan Garner, Reading Law: The Interpretation of Legal Texts 217 (2012))).

In other words, in the JVTA, Congress simultaneously (1) implicitly affirmed that a conviction for attempted sex trafficking of a minor may properly arise from a sting operation involving no actual minor, (2) did not amend § 1591(a) or § 1594(a) to clearly require knowledge or belief as to age for such a conviction, and (3) did amend § 1591(a) to require such knowledge in different circumstances (i.e., where the defendant only advertised a person for commercial sex). To be clear, the Eighth Circuit's decision in Jungers did not speak directly to the mens rea required for an attempt conviction. Nor would requiring the government to prove belief as to age in sting-operation cases prevent law enforcement from gaining convictions from such operations. See, e.g., Tunchez, 772 F. App'x at 106 (affirming conviction arising from similar sting operation based on defendant's belief that undercover officer was a minor). Still, the JVTA shows that Congress knows how to unequivocally require a higher mens rea for certain sex trafficking convictions. That it did not do so for attempted sex trafficking of a minor supports reading the statute to allow an attempt conviction, even absent an actual minor, based on reckless disregard as to age.

- 23 -

Finally, the policy behind modern attempt liability suggests no actual minor need be involved where the defendant has the culpable mental state of recklessness. McKenzie argues that, where an actual minor is involved, the defendant "threatens real harm," but "[a] defendant who seeks sexual contact with an adult or an imaginary person, while being reckless about their age, does not." However, between "the dangerousness of the actor's conduct" and "the dangerousness of the actor, as a person manifesting a firm disposition to commit a crime," "the proper focus of attention is the actor's disposition." A.L.I., supra, § 5.01 cmt. 1, at 298; see also Dworken, 855 F.2d at 16 ("The function of this definition [of attempt] is to make amenable to the corrective process those persons who have manifested a propensity to engage in dangerous criminal activity."). A defendant who solicits commercial sex from a person, recklessly disregarding a substantial risk that the person is under eighteen, has shown a willingness to endanger a minor, regardless of whether the person solicited was under eighteen (or existed at all).

## F.

The foregoing points toward the conclusion that a defendant may be convicted of attempted sex trafficking of a minor where he acts with reckless disregard as to whether the person solicited is a minor, even if that person is, in fact, an adult or a nonexistent creation of law enforcement.

McKenzie, though, contends that such a conclusion would permit a conviction in the face of legal impossibility. A "pure legal impossibility . . . arises when no statute proscribes the result that the defendant expected, desired, and intended to achieve." United States v. Fernandez, 722 F.3d 1, 31 (1st Cir. 2013) (citation modified). We have said before that "[p]ure legal impossibility is always a defense," including when the charged crime is an inchoate offense. United States v. Carter, 15 F.4th 26, 36 (1st Cir. 2021) (quoting Fernandez, 722 F.3d at 31). After all, a person cannot be convicted of attempting to do something that itself is not unlawful. See Fernandez, 722 F.3d at 31 ("[A] hunter cannot be convicted of attempting to shoot a deer if the law does not prohibit shooting deer in the first place." (quoting United States v. Hsu, 155 F.3d 189, 199 n.16 (3d Cir. 1998))).[13]

---

[13] In contrast, "factual impossibility," in which "a circumstance unknown to the defendant prevents him from achieving a specific objective," United States v. Dixon, 449 F.3d 194, 201–02 (1st Cir. 2006), is "not a defense to liability for inchoate offenses such as conspiracy or attempt," Carter, 15 F.4th at 47 (citation modified). For example, if a defendant believes he is soliciting a seventeen-year-old for commercial sex but is actually soliciting a nineteen-year-old, it would be factually impossible for him to complete the offense of sex trafficking of a minor, but that factual impossibility would not preclude an attempt conviction. See United States v. Chavez, 29 F.4th 1223, 1228 (10th Cir. 2022). "Pure legal impossibility" may also be distinguished from "mixed fact/law impossibility," which "involve[s] a factual mistake relating to a legal determination." Fernandez, 722 F.3d at 31 (quoting Ira P. Robbins, Attempting the Impossible: The Emerging Consensus, 23 Harv. J. on Legis. 377, 394 (1986)). In such a situation, "the actor's goal is illegal, but commission of the offense is somehow rendered impossible by attendant

From this premise, McKenzie's argument proceeds as follows. The district court's jury instructions allowed the jury to convict McKenzie if he acted with reckless disregard as to "Bri's" age, even if he truly believed "Bri" was an adult. But if he truly believed "Bri" was an adult, then, at most, he intended to solicit commercial sex with an adult. And § 1591(a) does not prohibit solicitation of commercial sex with an adult.[14] Therefore, the jury instructions permitted a conviction for an attempt to commit a legally impossible offense.

We are not persuaded. In framing this as a case of legal impossibility, McKenzie misconstrues the doctrine. In his view, "[t]he test is whether, <u>if all things were as the defendant believed them to be</u>, the defendant's intended acts would have violated a statute." In fact, the pertinent question is whether the law "proscribe[s] the goal that the defendant sought to achieve." <u>Hsu</u>, 155 F.3d at 199 n.16 (quoting Ira P. Robbins, <u>Attempting the Impossible: The Emerging Consensus</u>, 23 Harv. J. on

_____

circumstances." See <u>Hsu</u>, 155 F.3d at 199 n.16. Most federal courts of appeal do not recognize "mixed fact/law impossibility" as a defense, <u>Hsu</u>, 155 F.3d at 199 & n.16, though we have not weighed in one way or the other, <u>Fernandez</u>, 722 F.3d at 31 (distinguishing this type of impossibility from pure legal impossibility).

[14] Section 1591(a) does criminalize the solicitation of an adult where force, threats, fraud, or coercion cause the adult to engage in commercial sex. The government does not press any argument that this alternate ground for criminal liability applies to McKenzie's case.

Legis. 377, 389 (1986)). Even under the situation described by McKenzie, his goal was not the solicitation of commercial sex with an adult but rather the solicitation of commercial sex with a person whose potential minority he recklessly disregarded. That McKenzie believed that person to be an adult does not mean that he intended it so. He may have, instead, intended simply to solicit commercial sex, without caring whether the person solicited was an adult or a minor. That does not make out a legal impossibility defense. See generally Simons, supra, at 478-83, 479 n.105 (dissecting hypothetical where "the crime of receiving stolen property requires only reckless, conscious disregard of the risk that they are stolen," defendant receives property believing it is not stolen, property is in fact not stolen, and yet defendant's belief is reckless, under same Model Penal Code-derived definition of "reckless" we use here).

This conception of legal impossibility may be narrower than McKenzie had hoped, but that is a function of the statute. Although we have said that "[p]ure legal impossibility is always a defense," Carter, 15 F.4th at 36 (quoting Fernandez, 722 F.3d at 31), legal impossibility must be adjudged through the lens of the offense as defined by statute, see United States v. Bailey, 444 U.S. 394, 406 (1980) ("Principles derived from common law as well as precepts suggested by the American Law Institute must bow to legislative mandates."). Congress has chosen to prohibit not just

- 27 -

the knowing solicitation of a minor for commercial sex, but the knowing solicitation of a person for commercial sex, while knowing or recklessly disregarding that such person is a minor. To qualify for the defense of legal impossibility, then, it is not enough that McKenzie simply believed that "Bri" was an adult in the face of a substantial risk that she was not. See A.L.I., supra, § 5.01 cmt. 2, at 302 n.12, 303 n.13 (explaining that, as to offense of injuring person while recklessly unaware of FBI position, "the actor's mistaken belief as to the particular circumstances is made irrelevant by law").

That this is not a case of legal impossibility becomes clear once one tweaks the facts. Suppose McKenzie genuinely believed "Bri" was an adult, but that belief was mistaken -- "Bri" was actually a minor. McKenzie's proposed legal-impossibility analysis would equally apply to this scenario because, if all things were as he believed them to be, he would only be trying to solicit an adult and could therefore not be guilty of attempted sex trafficking of a minor. This scenario, however, would not be one of legal impossibility, but of mistake of fact -- which would not be a cognizable defense to attempted sex trafficking of a minor. See United States v. Encarnación-Ruiz, 787 F.3d 581, 585 (1st Cir. 2015) (construing defendant's mistaken belief as to victim's age as a mistake-of-fact defense). "It is a basic principle of criminal law that ignorance or mistake of fact may

provide a defense to a crime if it negates the requisite element of intent." United States v. Mardirosian, 602 F.3d 1, 8 (1st Cir. 2010) (citation modified). But "an actor whose mistake was reckless cannot use that mistake as a defense to a crime of recklessness." 1 Wharton's Criminal Law § 13:2 (16th ed. 2021). So McKenzie's belief that "Bri" was an adult would not give rise to an issue of legal impossibility if "Bri" were a minor, so long as his belief was reckless.[15] Likewise, it does not give rise to an issue of legal impossibility even though "Bri" was not a minor.

**G.**

Finally, McKenzie expresses a concern, understandable in some sense, that, under our holding today, the offense of attempted sex trafficking of a minor "would capture a host of innocent conduct between consenting youthful adults." We feel confident that this is not so for two reasons.

First, these statutory provisions cover only the knowing solicitation of a person, knowing or recklessly disregarding that such person "will be caused to engage in a commercial sex act." 18 U.S.C. § 1591(a); see also id. § 1591(e)(3) (defining

---

[15] Indeed, McKenzie argues only that "[t]he charge as instructed to the jury was legally impossible without an actual minor" and concedes that, "[i]f the [person solicited] had been a minor, then reckless disregard of her age would be an appropriate jury charge." He provides no reason, however, why one situation -- no minor -- is a legal impossibility but the other -- actual minor -- is not, if the defendant's reckless belief is the same in both situations.

"commercial sex act" as "any sex act, on account of which anything of value is given to or received by any person").  They would not, for example, apply to an individual who meets a young-looking but adult person online or in a bar and has consensual, noncommercial sex with that person.[16]

Second, the "reckless disregard" standard is not a light one.  It requires that the defendant be aware of the risk that the person solicited is a minor, that the risk be substantial, and that ignoring that risk represent a "gross deviation" from the norm.  Borden, 593 U.S. at 427; see also Michael T. Cahill, Attempt, Reckless Homicide, and the Design of Criminal Law, 78 U. Colo. L. Rev. 879, 902 (2007) (explaining that "there is not always a lot of moral difference between knowledge and recklessness" because a reckless person still "recognizes a significant risk" but "is interested in performing a certain act, or achieving some other result, regardless of that risk").  We thus find it unlikely

_____

[16] McKenzie counters that "there are numerous federal crimes prohibiting sexual contact with minors without limitation to commercial sex, and Congress could add a recklessness mens rea to any of them."  But to the extent that we presume that Congress, in enacting a law, considers the law's practical ramifications within the context of other laws, that presumption applies to the other laws that Congress has enacted, not to those it might enact in some hypothetical future.  See, e.g., Norman Singer & Shambie Singer, 2B Sutherland Statutes and Statutory Construction § 51.2 (7th ed. 2025) ("Courts assume that a legislature always has in mind previous statutes relating to the same subject when it enacts a new provision.").  Similarly, that some forms of commercial sex may be lawful in some states, as McKenzie points out, makes no difference to our understanding of this federal statute.

that we today construct a trap for the unwary. Rather, we feel secure this "trap" will only capture actors who intend to solicit another person for commercial sex, recognize that the person very well may be a minor, and continue in their conduct all the same.

## H.

We therefore hold that a defendant may be convicted of attempted sex trafficking of a minor, in violation of 18 U.S.C. §§ 1591(a)(1) and 1594(a), where he acts in reckless disregard of a substantial and unjustifiable risk that the person solicited is under eighteen -- regardless of whether the person solicited turns out to actually be under eighteen. That being so, we find no error in the district court's jury instructions and no merit in McKenzie's sufficiency-of-the-evidence argument.

## IV.

Next, we consider McKenzie's argument that the district court erred in refusing to instruct the jury on entrapment. We find no cause for reversal here.

We review de novo a preserved challenge to a district court's refusal to give an entrapment instruction. United States v. Dávila-Nieves, 670 F.3d 1, 9 (1st Cir. 2012). "To obtain an entrapment instruction, the defendant must show, with 'some hard evidence,' that (1) the government induced the commission of the charged crime and (2) he was not otherwise predisposed to commit it." United States v. O'Donovan, 126 F.4th 17, 40 (1st Cir. 2025)

- 31 -

(quoting United States v. Sandoval, 6 F.4th 63, 100 (1st Cir. 2021)). "In other words, the record must contain evidence that makes the entrapment theory 'plausible' or 'superficially reasonable.'" United States v. Pérez-Rodríguez, 13 F.4th 1, 19 (1st Cir. 2021) (quoting United States v. Gamache, 156 F.3d 1, 9 (1st Cir. 1998)). In reviewing the record, we must take the facts in the light most favorable to the defendant and indulge all reasonable inferences to his benefit. Id.

We begin -- and end -- with the inducement prong. To establish inducement, a defendant must show that government agents engaged in conduct "that would cause a person not otherwise predisposed to commit a crime to do so." United States v. Hinkel, 837 F.3d 111, 117 (1st Cir. 2016). In that sense, the inducement must be "improper." Pérez-Rodríguez, 13 F.4th at 17. A sting operation that "[m]erely provid[es] an opportunity to commit a crime is not improper inducement." O'Donovan, 126 F.4th at 40. Rather, improper inducement requires "opportunity plus something else." Id. This "plus" factor may consist of "intimidation and threats, 'dogged insistence,' playing on the defendant's sympathies, [or] 'repeated suggestions.'" Pérez-Rodríguez, 13 F.4th at 17 (quoting United States v. Gendron, 18 F.3d 955, 961 (1st Cir. 1994)); see also Dávila-Nieves, 670 F.3d at 10 ("Typical plus factors are excessive pressure by the government upon the

defendant or the government's taking advantage of an alternative, non-criminal type of motive." (citation modified)).

Here, McKenzie points to several facts allegedly showing improper inducement. To start, he emphasizes that, when Agent Draper first offered him twelve-year-old "Jes" and fourteen-year-old "Bri," McKenzie responded that he was "not into anything under 18"; yet, he says, the government persisted. He also argues that Agent Draper used photos of adult women as another form of inducement. Next, he suggests Agent Draper downplayed the harm of commercial sex with a minor by comparing it to child pornography. And he contends that, toward the end of their conversation, Agent Draper "cajoled [him], telling him that they had no time for talking, it was time for action." Finally, McKenzie points out that it took two hours for Agent Draper to talk him into the transaction. Not one of these facts evinces improper inducement.

First, the fact that McKenzie said at the outset that he was "not into anything under 18" is of no help to him. The record is clear that Agent Draper at that point ended the exchange, which later recommenced only because McKenzie again reached out to Agent Draper, without any intervening indication that she had "anything" over eighteen to offer. See United States v. Medina-Ortiz, 160 F.4th 11, 17 (1st Cir. 2025) (rejecting inducement argument where, after undercover officer told defendant she was fourteen,

- 33 -

"[defendant] (despite having time to consider his actions during the communication pause) reconnected with 'her'").

The photos that Agent Draper used did not give rise to inducement, either. McKenzie implies that it was improper for Agent Draper to use adult women in the original ad and the later verification photo of "Bri." The unstated premise is that Agent Draper was luring McKenzie in by intentionally making "Bri" look like an adult. But Agent Draper was doing the opposite: using age-regression software to make an adult look like a minor, thereby buttressing -- rather than belying -- Agent Draper's express representations that she had nothing to offer McKenzie if he did not want a minor.

Nor was there anything improper in Agent Draper's expressed hesitation to send a pornographic picture of "Bri" on the ground that it could land her in federal prison. McKenzie contends that we should read into Agent Draper's statement an attempt to downplay the seriousness of having commercial sex with a minor. While we have found that "downplaying the harm caused by child abuse" can be a plus factor, Pérez-Rodríguez, 13 F.4th at 20 (citation modified), nothing in Agent Draper's comment about the penalties associated with child pornography suggests that commercial sex trafficking does not harm the subject minor. Cf. id. (highlighting that government agent "repeatedly stated that

this imagined [sexual] encounter would be a positive experience for the minor"); see also id. at 20-21 (collecting cases).

Similarly, Agent Draper did not cajole McKenzie in any way. In the portion of the text transcripts to which McKenzie points, Agent Draper merely said, "if ur not interested that's cool," "Lol k just don't know if ur for real or just wanna talk," and asked him twice whether he was close to the hotel. Even drawing reasonable inferences in McKenzie's favor, we do not read Agent Draper's messages as saying, as McKenzie reads them, that "they had no time for talking, it was time for action." Agent Draper at no point said the deal would be off the table if McKenzie did not arrive soon; she merely asked where he was. In fact, at the beginning of this part of the exchange, she gave him yet another chance to walk away if he was not interested in commercial sex with "Bri."

Finally, we see nothing improper in the duration of Agent Draper's connections with McKenzie. Certainly, the length of the government's interactions with a defendant may suggest inducement. Compare Gamache, 156 F.3d at 11 (stressing that "the Government persevered for almost seven months to elicit the offense conduct"), with Medina-Ortiz, 160 F.4th at 14-16 (finding no inducement in operation spanning several days). But, here, McKenzie took less than twenty-two minutes from the start of the interaction to make clear his intent to have sex with a fourteen-year-old. From that

point, McKenzie focused on trying to confirm Agent Draper was not a "fed" then showed up at the agreed-upon hotel a little over two hours after their conversation began. In so proceeding, McKenzie "demonstrate[d] an eagerness to commit the crime rather than reluctance that was overcome only by inducement." Dávila-Nieves, 670 F.3d at 11.

Because McKenzie failed to produce any evidence of improper inducement on the part of Agent Draper, the district court did not err in refusing to give his requested entrapment instruction.[17]

**V.**

McKenzie also challenges the district court's evidentiary rulings excluding three sets of evidence he sought to introduce in his defense: (1) a church sermon McKenzie gave shortly before his arrest, (2) testimony from McKenzie's father regarding McKenzie's good character and state of mind, and (3) cross-examination of Agent Draper regarding McKenzie's lack of a criminal record and the penalties for child pornography.

---

[17] We note that McKenzie also argues the district court applied the wrong standard below. However, our conclusion on de novo review that no entrapment instruction was warranted renders harmless any error in the district court's standard. See United States v. Symonevich, 688 F.3d 12, 24 (1st Cir. 2012) ("An error mandates reversal only when it is prejudicial based on a review of the entire record."). Similarly, given that McKenzie's challenge falters on the inducement prong of entrapment, we need not consider McKenzie's arguments on the predisposition prong. See Pérez-Rodríguez, 13 F.4th at 19.

"To preserve a claim of error in a ruling to exclude evidence, a party need only inform the court of the substance of the evidence by an offer of proof." United States v. Saemisch, 18 F.4th 50, 59 (1st Cir. 2021) (citing Fed. R. Evid. 103(a)(2)). Where the claim has not been preserved, we apply plain-error review, which requires an appellant to show "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Encarnacion, 26 F.4th 490, 504 (1st Cir. 2022) (quoting United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001)). Where the claim has been preserved, we review the district court's decision for abuse of discretion. Saemisch, 18 F.4th at 59. Even under this standard, though, we will not reverse "if the error was harmless, that is, if it is highly probable that the error did not affect the outcome of the case." Neece v. City of Chicopee, 106 F.4th 83, 93 (1st Cir. 2024) (citation modified).

As to the substantive rules applied to evidentiary challenges, relevance serves as the touchstone. Irrelevant evidence is inadmissible at trial. Fed. R. Evid. 402. Evidence is relevant only if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R.

Evid. 401. Of course, other rules further limit the admissibility of relevant evidence, but preservation and relevance suffice to guide us through McKenzie's evidentiary challenges.

## A.

First, McKenzie claims error in the district court's exclusion of a sermon McKenzie gave at his church on October 2, 2022, one month before his arrest. In the sermon, McKenzie referred to himself as "somebody here who has transgressed against God," discussed his loneliness, and explained the need to "go to God and pray and let him clean you up." After McKenzie and the government filed motions in limine on the subject, the district court excluded the sermon as irrelevant. McKenzie argues the district court erred because the sermon was relevant to corroborate his trial testimony that "he sought adult prostitutes out of loneliness in the year leading up to his arrest," as well as to rebut the government's argument that he fabricated that testimony to support his defense.

We review for abuse of discretion and find no error in the district court's decision.[18] McKenzie's sermon falters at the doorstep of relevance under Rule 401. Whether McKenzie felt lonely

---

[18] The government asserts that we should apply plain-error review because McKenzie did not tie his sermon to his state of mind below. Because we conclude McKenzie loses even under an abuse-of-discretion standard, we need not address the government's waiver argument. See Medina, 155 F.4th at 21 n.6.

or sought out commercial sex with adults has no "tendency to make [the] fact more or less probable" that he attempted to solicit commercial sex with "Bri" while recklessly disregarding a substantial risk that she was a minor. Fed. R. Evid. 401. These facts may have spoken to McKenzie's motive for seeking out commercial sex generally, but McKenzie's conviction for attempted sex trafficking did not hinge on motive. See Medina, 155 F.4th at 21 (distinguishing intent from motive). The district court did not abuse its discretion in excluding this evidence as irrelevant.

**B.**

McKenzie also challenges the district court's exclusion of proposed testimony from his father. A week before trial, the government filed a motion in limine addressing his father's potential testimony regarding McKenzie's religious beliefs and lack of sexual interest in minors. The motion asked the district court "to compel the defense to make an offer of proof as to the expected testimony of [McKenzie's father] and to exclude questioning in areas that call for speculation, hearsay, or inadmissible opinion of character evidence." McKenzie responded with his own motion in limine "to admit evidence of defendant's state of mind." The motion described his father's testimony as "regarding [the McKenzies'] faith, world view, and the concepts that (1) humans can not comprehend God's eternal plan, and (2) God offers redemption to sinners through good works." The district

court addressed McKenzie's motion orally, stating, "there's a motion in limine to admit evidence of the defendant's state of mind, and three matters have been set forth there. None of them is relevant. They're all excluded."[19] When defense counsel pressed the court regarding McKenzie's father, specifically whether, if McKenzie testified that his religion impacted his decision on the day in question, his father could then be permitted to testify, the court elaborated, "It's advisory. I've made my ruling. I don't know what's going to happen. We'll see."

Now, on appeal, McKenzie asks us to find error in that advisory, pretrial ruling that the proffered testimony by McKenzie's father would not be relevant. Generally, where a defendant raises an evidentiary issue in a motion in limine, the issue will be preserved for appeal if the district court rejects the defendant's argument unconditionally. Encarnacion, 26 F.4th at 504; see also Fed. R. Evid. 103(b). Where the district court's ruling is conditional, though, the defendant must re-raise the issue at trial to preserve his appellate rights. Id. Here, the district court made its ruling with regard to McKenzie's father's testimony conditional by labelling the ruling "advisory" and suggesting that McKenzie's testimony might change the court's

_____

[19] The "three matters" referred to comprise: (1) the sermon; (2) McKenzie's father's testimony regarding his religious beliefs; and (3) notes from McKenzie's phone, the exclusion of which McKenzie does not challenge here.

mind. McKenzie never sought to introduce any of his father's testimony at trial thereafter, failing to preserve his claim for appeal. See United States v. Grullon, 996 F.3d 21, 31 (1st Cir. 2021) (finding evidentiary claim unpreserved where district court made "preliminary" ruling and defendant "made no attempt to raise the . . . evidence during trial").

The entirety of McKenzie's challenge with respect to his father's testimony is thus subject to plain-error review. However, McKenzie has failed to make any plain-error argument on appeal. As a result, we treat the challenge as waived entirely. See United States v. Martínez-Mercado, 132 F.4th 61, 68-69 (1st Cir. 2025) ("A defendant on appeal waives a forfeited claim when his brief fails to even mention plain error, let alone argue for its application." (citation modified)).

## C.

We next turn to the district court's exclusion of testimony regarding McKenzie's lack of a criminal record and the penalties for child pornography.

During cross-examination of Agent Draper, defense counsel asked, "After, um, Mr. McKenzie was arrested, did you check to see if he had ever been arrested for anything before?" The government objected, and the district court sustained the objection without further discussion. McKenzie argues only that this exclusion constituted error because his lack of a criminal

record was relevant to the propensity prong of his proposed entrapment defense. But given the district court's finding that McKenzie failed to make even a plausible showing of improper inducement -- and our affirmance of that finding -- McKenzie's propensity to commit the crime (or lack thereof) was irrelevant.

For a similar reason, we find no reversible error in the exclusion of testimony regarding the penalties for child pornography. Earlier in the cross-examination of Agent Draper, defense counsel requested the court's permission to ask "a limited question suggesting that the penalties for child pornography are similar to the penalties for this crime." The court denied that request. McKenzie claims the testimony would have been relevant to his "downplaying" theory of inducement in his entrapment defense. But our finding that Agent Draper's reference to child pornography in her text messages with McKenzie did not constitute improper inducement renders harmless any error in excluding this evidence. Even with the child-pornography penalties, McKenzie would not be entitled to an entrapment instruction.

**VI.**

Finally, McKenzie contends that the specific judgment entered by the district court has erroneously deprived him of certain sentence-related benefits under the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.

The First Step Act grants some prisoners time credits toward their sentences for completing "evidence-based recidivism reduction programming." 18 U.S.C. § 3632(d)(4)(A). A prisoner serving a sentence under 18 U.S.C. § 1594 is eligible for such programming, but a prisoner serving a sentence under 18 U.S.C. § 1591 is not. 18 U.S.C. § 3632(d)(4)(D)(xxvii). The district court's judgment describes McKenzie's offense as "Attempted Sex Trafficking of a Child," and lists as the statutory sections violated, "18 USC § 1591(a)(1), (b)(2) and 18 USC § 1594(a)." Based on the inclusion of § 1591 in the judgment, McKenzie tells us, the Bureau of Prisons (BOP) has deemed him ineligible for the First Step Act's time credits. The government does not dispute that McKenzie, who was convicted only of an attempt under § 1594, should be eligible for such time credits. The question is how to remedy this situation.

McKenzie asks that we remand for the district court to correct the judgment under Federal Rule of Criminal Procedure 36. Pursuant to Rule 36, "the court may at any time correct a clerical error in a judgment." Fed. R. Crim. P. 36; see, e.g., United States v. Ahmed, 51 F.4th 12, 19 n.4 (1st Cir. 2022) (remanding to allow parties to request Rule 36 correction where defendant was charged with substantive healthcare fraud but judgment incorrectly listed conviction as conspiracy to commit healthcare fraud). But no clerical error occurred here. Because § 1594(a) covers attempts

to commit a variety of offenses,[20] the judgment needed to include statutory references to § 1591(a)(1) and (b)(2) to clarify which offense was attempted and what penalties attached.[21]  And "[t]he inclusion of statutory references to both the [attempt] statute and the sections describing the object of the [attempt] does not transform the judgment into one that describes a conviction of the substantive crime."  United States v. Warren, 5 F.4th 1078, 1081 (9th Cir. 2021).  After all, under "Nature of Offense," the judgment correctly states, "Attempted Sex Trafficking of a Child."  This case, then, does not fit within Rule 36's remit for clerical errors.

In the alternative, McKenzie asks the panel to state that his attempt conviction "is not legally equivalent to a conviction under 18 U.S.C. § 1591," at least for purposes of the First Step Act.  We agree with this approach, which has already been adopted by the Ninth Circuit in an analogous case.  See Warren, 5 F.4th at 1081 n.2 ("[Defendant] now has the opportunity to present to the BOP this opinion, which construes the judgment to reflect that Defendant committed a single offense under 18 U.S.C. § 1594(c)."); see also United States v. Phillips, No. CR

_____

[20]  In full, § 1594(a) reads, "Whoever attempts to violate section 1581, 1583, 1584, 1589, 1590, or 1591 shall be punishable in the same manner as a completed violation of that section."

[21]  Section 1591(a)(1) provides the substantive offense, while § 1591(b)(2) provides the penalty.

13-286, 2022 WL 17415077, at *3 (E.D. La. Dec. 5, 2022) (following a similar approach). The First Step Act specifically makes prisoners serving a sentence under § 1594 eligible for its time credits. But, as we have explained, a judgment of conviction under § 1594 must include a reference to the underlying substantive offense. Thus, under the BOP's alleged reading, every prisoner convicted under § 1594 would be held ineligible for the First Step Act's time credits, in contravention of the Act's direct statutory mandate. We therefore clarify that McKenzie has been convicted only under 18 U.S.C. § 1594, not 18 U.S.C. § 1591.

## VII.

For the foregoing reasons, we find no reversible error and affirm McKenzie's conviction under 18 U.S.C. § 1594.